MOLINE PLOW CO. v. OMAHA IRON STORE CO. *
OMAHA IRON STORE CO. v. MOLINE PLOW CO.

(Circuit Court of Appeals, Eighth Circuit. July 24, 1916.)

Nos. 4597, 4598.

1. PATENTS ⚬328—INVENTION—PLOWSHARE.
     The Lindgren patent, No. 860,308, for a plowshare reinforced by a patch of soft metal welded to its lower face, *held* void for lack of invention.

2. TRADE-MARKS AND TRADE-NAMES ⚬71—UNFAIR COMPETITION—SIMULATING TRADE-MARK.
     Defendant sold plowshares intended to replace those on complainant's plows and plainly so marked with a stencil on their face. Complainant's shares had stamped into the metal on the back its monogram trade-mark, and the manufacturer of those sold by defendant also stamped on their back a mark so nearly like complainant's trade-mark as not to be distinguishable therefrom by ordinary purchasers. *Held*, that there was such simulating of complainant's mark as was calculated to deceive purchasers and as to constitute unfair competition.
     [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 82; Dec. Dig. ⚬71.]

3. TRADE-MARKS AND TRADE-NAMES ⚬97—UNFAIR COMPETITION—INJUNCTION.
     The manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods, and to protection against unfair dealing,

whether there be a technical trade-mark or not, and anything which is intended and calculated to deprive either the manufacturer or the public of such rights is a fraud, which a court of equity may lawfully prevent by injunction.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ☞97.]

4. TRADE-MARKS AND TRADE-NAMES ☞70(1)—UNFAIR COMPETITION—DUTY TO DISTINGUISH GOODS.

The duty is imposed upon every manufacturer or vendor, especially when he enters upon a field previously occupied by another, to so distinguish the articles he makes or the goods he sells from those of his competitor that neither their names nor their dress will be likely to deceive the public, or to mislead the ordinary buyer into purchasing his goods for those of his competitor, or to create confusion in the trade between the rival articles.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70(1).]

5. TRADE-MARKS AND TRADE-NAMES ☞86—UNFAIR COMPETITION—RIGHT TO RELIEF—LACHES.

Constant or continuing use of unfair methods of competition neither deprives the injured party of his equitable right to an injunction against their continuance nor confers upon the trespasser any right to perpetuate them.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. ☞86.]

6. COURTS ☞330—JURISDICTION OF FEDERAL COURTS—AMOUNT OR VALUE IN CONTROVERSY.

A federal court of equity is not without jurisdiction to render a decree for an injunction against continuing trespasses, where threatened irreparable injury is alleged, by the mere fact that no proof has been made of the specific amount of that injury.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 898; Dec. Dig. ☞330.]

7. TRADE-MARKS AND TRADE-NAMES ☞97—INJUNCTION AGAINST UNFAIR COMPETITION—SCOPE.

In a suit by a manufacturer of plows to restrain the defendant from unfair competition by selling plowshares made by another to replace worn-out or broken shares, and marked in imitation of those made and sold by complainant to replace those on its own plows, the injunction should be restricted to such shares as are fitted for use on complainant's plows.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 110, 111; Dec. Dig. ☞97.]

8. TRADE-MARKS AND TRADE-NAMES ☞70(2)—UNFAIR COMPETITION.

Where a manufacturer of plows uses on extra shares designed to replace those on its plows which may become worn out or broken certain marks and numbers to designate their quality and the size and style of plow for which they are fitted, other manufacturers of shares to be sold in competition have the right to use the same designations thereon, when it does not tend to confuse the trade or deceive purchasers; but it is their duty to see that their repair parts are so marked as to prevent such confusion and to notify purchasers that they are not made by the original manufacturer.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 81; Dec. Dig. ☞70(2).]

Appeal from the District Court of the United States for the District of Nebraska; Thomas C. Munger, Judge.

Suit in equity by the Moline Plow Company against the Omaha Iron Store Company. From the decree, both parties appeal. Amended and affirmed.

Samuel W. Banning, of Chicago, Ill. (Thomas A. Banning, Thomas A. Banning, Jr., and Ephraim Banning, all of Chicago, Ill., on the brief), for complainant.

Otto Raymond Barnett, of Chicago, Ill. (Percival H. Truman, of Chicago, Ill., on the brief), for defendant.

Before SANBORN, ADAMS, and CARLAND, Circuit Judges.

SANBORN, Circuit Judge. The Moline Plow Company, a corporation of Illinois, brought a suit in equity against the Omaha Iron Store Company, a corporation of Nebraska, for infringement of letters patent No. 860,308 for an improvement in plowshares, issued to August Lindgren July 16, 1907, and for unfair competition, and prayed for an injunction and an accounting. The suit was founded on the sale by the defendant of plowshares manufactured by the Star Manufacturing Company and fitted to replace plowshares upon plows made by the Moline Plow Company. The Star Company assumed the charge and expense of the suit, and it developed into a trial of the respective equities of the two manufacturing companies, and resulted in a decree that the patent was void for lack of invention, that the defendant was guilty of unfair competition, and that it be enjoined from selling or dealing in plowshares made by the Star Company marked with the monogram "M. Co." standing in association with a star, and that the complainant was entitled to an accounting and to the costs of the suit.

[1] Both parties have appealed, and the first complaint of the Moline Company is that the court did not adjudge the fifth claim of the patent to Lindgren valid and infringed. That claim reads as follows:

"5. The improved plowshare composed of hard steel having a soft metal reinforcing patch welded to its lower or reverse face, said patch being of an area to extend backward from the landside edge of the share adjacent the top edge, to a point back of the first bolt hole, and a landside welded to the share over the soft metal patch, thereby avoiding breakage and facilitating the attachment of the landside."

The purpose of the improvement described in the specification and here claimed was to strengthen the thin, brittle, hard steel plowshare and prevent its breaking, and at the same time to provide at the place of junction of the landside of the plow and the plowshare a soft thick surface to which the landside could be welded more readily than to the hard steel surface of the share. Lindgren accomplished this object by welding to the under or reverse side of the share a patch of soft steel, extending from a point near the longitudinal center of the upper edge of the share to a point adjacent the forward end of the landside, which, after the application of the patch, was welded over it to the share. He states in his specification that plowshares are most liable to break at the forward bolt hole provided to bolt them to the mold boards, that to prevent this the

soft metal patch is extended in his invention over the point where this bolt hole is formed both fore and aft of and below it, so as to reinforce and strengthen the share in the vicinity of this bolt hole. In his improved plowshare the soft metal patch extends backward from the landside edge of the share adjacent to the top edge to a point back of the first bolt hole. But the evidence is clear and convincing that as early as 1882 it was the common practice of blacksmiths to weld a patch of soft metal onto a blank plowshare before welding the latter to the landside of the plow for the purpose of gaining thickness and strength for the share, that this patch was of no specific size, that sometimes it would come up to the first bolt hole, and sometimes it would extend around and beyond it, but that the makers had no specific intention regarding this extension. Counsel argue that the patches of the prior art do not anticipate Lindgren's improvement, because those who made and used them had no purpose or intention of strengthening the specific part of the plowshares around the first bolt hole. But there can be no doubt that any mechanic skilled in the art presented with the problem of strengthening a plowshare around and in the vicinity of a bolt hole, and with the fact that patches of soft metal had been welded onto such shares to strengthen other parts of them, would have had no difficulty in solving that problem, by welding such a patch upon the share around the bolt hole, or by extending a patch about to be placed on the share beyond the bolt hole. There was no invention in perceiving or forming the device of Lindgren.

[2] Since the year 1870 the Moline Plow Company has been manufacturing plows, and has had and has a trade-mark consisting of the letters "M. P. Co." in the form of a monogram. Since 1870 the Star Manufacturing Company has been making parts of agricultural implements, and has had a trade-mark consisting of the letters "M. Co." in monogram form inclosed in the representation of a star. The trade-mark of the Moline Plow Company antedates the trade-mark of the Star Company. About the year 1905 the Star Company commenced to make plowshares fitted to replace plowshares upon plows made by the Moline Plow Company and others fitted to replace shares upon plows made by other manufacturers. When the representation of the star which surrounds the monogram of the Star Company in its trade-mark is omitted the two monograms after 1905 were in these forms:

          

Complainant's Mark.          Defendant's Mark.

The Moline Plow Company made plows of many styles and sizes. It also made plowshares of different qualities, styles, and sizes fitted to replace the plowshares on the plows of its manufacture when the latter became worn or broken. One of these shares was a solid steel plowshare of substantially uniform thickness, but such a share

cannot be sufficiently hardened on the surface to secure effective scouring in some soils. Another and more expensive and valuable plowshare which it made was a soft center share, consisting of soft steel extra hardened on both sides, so that when finished it consisted of a very hard layer of steel on each side and a layer of soft steel between them. Its price for these soft center plowshares is $2.25 each, while its price for similar solid steel shares is $1.80 each. The defendant sells the solid steel shares to replace these soft center shares for $1.70 each. The soft center shares secure more effective scouring and greater durability. The very hard steel on the surface does not wear as rapidly as the softer solid steel shares, and it scours better. The Moline Company stamped or cut in the reverse or under side of all its soft center shares its trade-mark to denote that they were the genuine product of the Moline Company, the representation of a star to denote the quality of the share, that it was a soft center share, and such letters and figures as "W. 14," "W. H. 16," "H. 116," called stock marks, to indicate the respective styles and sizes of Moline plows which they would fit.

Since 1904, but not earlier, the Star Company in competition with the Moline Company's soft center shares has been making and selling solid steel shares fitted to replace the former into the under or reverse side of which it has stamped or cut into the metal its trademark—that is to say, its monogram within the representation of the star—and the letter and figures "W. 14," or such similar letters and figures as would denote the size and style of Moline plows they would fit. On the face or upper side of the shares it has stenciled in comparatively small letters the words "Made by Star Mfg. Co." on the next line in much larger letters the words "Carpentersville, Ill.," and in the middle of the face of the shares in bold type twice as large as those in which the words "Made by Star Mfg. Co." are stenciled, and occupying two lines, the words "For 14 in. Moline Soft Center." It has also pasted on each of the shares a paper label containing a printed statement that the share was made by the Star Company and is guaranteed to be a duplicate of the original share and to fit the plow for which it is intended. The Star Company has also made, and sold in competition with the Moline Company's solid steel shares, plowshares fitted to replace them, stamped with its trade-mark and with the stock marks of the Moline Company, some of which bear no stenciled words on their face, except in bold type such words as "For 14 in. Moline." The defendant, the Omaha Iron Store Company has been and is buying from the Star Company and selling to its customers these shares of different types and sizes made and marked as described above. The decree enjoins the defendant from dealing in plowshares made by the Star Company bearing its monogram standing in association with the representation of a star.

The Moline Company complains that the decree does not prohibit the defendant from dealing in such shares marked with a star or with the Moline Company's stock marks, such as "W. H. 16," "W. 14," "H. 116." The Star Company objects to the decree because it grants an injunction, and because, if an injunction were granted, it was not lim-

ited to a prohibition of the use of its trade-mark upon shares made by it to replace plowshares made by the Moline Company.

[3-4] The manufacturer of particular goods is entitled to the reputation they have acquired, and the public is entitled to the means of distinguishing between those and other goods and to protection against unfair dealing, whether there be a technical trade-mark or not. The essence of the wrong consists in the sale of the goods of one manufacturer for those of another. Elgin National Watch Co. v. Illinois Watch Co., 179 U. S. 665, 674, 21 Sup. Ct. 270, 45 L. Ed. 365. The sale of the goods of one manufacturer as those of another is unfair competition, and constitutes a fraud which a court of equity may lawfully prevent by injunction. The duty is imposed upon every manufacturer or vendor, especially when he enters upon a field previously occupied by his competitor, to so distinguish the articles he makes, or the goods he sells, from those of his rival that neither their names nor their dress will be likely to deceive the public or to mislead the ordinary buyer into purchasing his goods as those of his competitor, or create confusion in the trade between the rival articles. Seixo v. Provezende, 1 Chan. App. 192, 194; Mfg. Co. v. Spear, 4 N. Y. Super. Ct. 599; Coats v. Merrick Thread Co., 149 U. S. 562, 13 Sup. Ct. 966, 37 L. Ed. 847; Shaver v. Heller & Merz Co., 108 Fed. 821, 831, 48 C. C. A. 48, 58, 65 L. R. A. 878; Allen B. Wrisley Co. v. Iowa Soap Co., 122 Fed. 796, 798, 59 C. C. A. 54, 56.

This duty the Star Company failed to discharge. For years the Moline Company had stamped its monogram trade-mark upon the plowshares it made before 1905, when the Star Company commenced to make copies of them. The Star Company stamped into these copies the monogram of its trade-mark, which is so similar to the trade-mark of the Moline Company as to be indistinguishable from it by an ordinary purchaser. It stamped into these copies the marks of quality, style, and size placed upon the original plowshares by the Moline Company. It stenciled upon the face of the shares in large bold type such words as "For 14 in. Moline Soft Center" or "For 16 in. Moline," and placed in small inconspicuous type the words "Made by Star Mfg. Co.," and it placed in small type on an easily destructible paper label a printed statement that the shares were made by it and guaranteed to be duplicates of the originals. This paper label was of too ephemeral a nature to overcome the effect of the more permanent marks stamped into and the words stenciled upon the shares. Prest-O-Lite Co. v. Heiden, 219 Fed. 845, 846, 847, 135 C. C. A. 515, 516, 517, and the word "Moline" is made so prominent and the "Star Mfg. Co." so inconspicuous that the ocular demonstration of the view of the shares leaves little doubt that these marks must create confusion in the trade, and that they are more likely to deceive ordinary purchasers, and lead them to buy the shares made by the Star Company for those made by the plaintiff, than they are to lead them to purchase such shares as the product of the Star Company. The complainant was clearly entitled to an injunction.

[5] The argument of counsel for the defendant that the complainant is estopped from maintaining any suit for this relief by its laches

has received consideration and reflection. It is based on the fact that the Star Company has been making and selling copies of the Moline Company's shares since 1905; that in 1907 the Moline Company brought a suit against Harbison-Modica Manufacturing Company for dealing in such shares made by the Star Company and subsequently dismissed that suit; that it brought this suit in 1910, but failed to prosecute it to decree until 1915. But these suits came to the knowledge of the Star Company, and they constituted notice to it that the Moline Company neither consented to nor acquiesced in the former's simulation of the marks and dress of its shares, so that its silence or acquiescence could not have been the inducing cause of its wrongdoing. The record contains no substantial evidence of an abandonment of its rights by the Moline Company, and constant or continuing trespasses neither deprive the victim of his equitable right to an injunction against their continuance in the future, nor confer upon the trespasser any right to perpetuate them. Stearns-Roger Mfg. Co. v. Brown, 114 Fed. 939, 944, 52 C. C. A. 559, 564; Layton Pure Food Co. v. Church Dwight Co., 104 C. C. A. 475, 481, 182 Fed. 35, 41, 32 L. R. A. (N. S.) 274. The defense of laches cannot be sustained.

[6] Nor was the court without jurisdiction to render the decree because only three plowshares of the value of but $5 were proved to have been sold by the Omaha Iron Company. There was a diversity of citizenship of the parties and an averment in the complaint that the profits the plaintiff was entitled to recover exceeded $5,000, and that it would suffer irreparable injury unless the defendant was enjoined from continuing its trespasses. The defendant denied that the plaintiff had sustained, or would sustain, any damage whatever. The court found that the plaintiff had been injured, and adjudged an accounting to ascertain the amount of its damages and an injunction. Since the decree the accounting has been waived, but during the trial and until the waiver the amount in controversy was the $5,000 profits alleged to have been received by the defendant, or the $5,000 damages alleged to have been sustained by the complainant, plus the value of the right of the complainant to prevent future unfair competition by an injunction. What the profits or damages that had occurred were was unknown when the decree was rendered, and the amount in controversy at that time under the pleadings was then more than the $5,000 which the complainant was still claiming. And, aside from the profits and damages that had accrued, the value of the right to the injunction was sufficient to sustain the jurisdiction of the court below. For a federal court of equity is not without jurisdiction to render a decree for an injunction against continuing trespasses, where threatened irreparable injury is alleged, by the mere fact that no proof has been made of the specific amount of that injury. Gannert v. Rupert, 127 Fed. 962, 964, 62 C. C. A. 594; Griggs, Cooper & Co. v. Erie Preserving Co. (C. C.) 131 Fed. 359, 360.

[7] But the injunction granted was too broad. It should be restricted to a prohibition of dealing in plowshares bearing the objectionable marks, words, and figures, which are fitted for use on plows made by the Moline Company, because the latter company sustains no ac-

tionable injury from the sale by the defendant of shares, bearing the Star Company's marks, which are fitted for use on the products of other manufacturing companies, but not upon the products of the Moline Company.

[8] The Moline Company insists that the decree should have prohibited the sale of the Star Company's shares bearing the marks of the representation of a star, or "W. H. 16," "W. 14," "H. 116," or any other stock marks of the plaintiff. These marks were and are used by the company to designate the quality, sizes, and styles of the plows and shares it makes, and their use by manufacturers of specific shares to replace the original Moline Company shares is permissible, when it does not tend to confuse the trade, or to lead purchasers to buy the products of the latter for the manufactures of the former, but not otherwise. Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 165 Fed. 413, 416, 417, 418, 91 C. C. A. 363, 366, 367, 368; Deering Harvester Co. v. Whitman & Barnes Mfg. Co., 91 Fed. 376, 380, 33 C. C. A. 558, 562; Bender v. Enterprise Mfg. Co., 156 Fed. 641, 84 C. C. A. 353, 17 L. R. A. (N. S.) 448, 13 Ann. Cas. 649. But inasmuch as the manufacturers and dealers in the extras or repair parts not made by the original manufacturer appropriate, use, and have the benefit of the latter's stock marks, it is their duty to see that the purchasers are duly notified that such parts are not made by the original manufacturer. The star was and is stamped on its soft center shares by the Moline Company for the purpose of showing that they are made of two layers of steel extra-hardened with a layer of soft steel between them. The Star Company ought not to be permitted to stamp or use this star on the shares it makes, because the latter are not made of such layers, but of hard steel, and because the use upon the repair parts of the star, which is a part of the Star Company's trade-mark, tends to create a confusion in the trade and to mislead the purchasers. The letters and figures "W. H. 16," "W. 14," "H. 116," and others of a similar character, designate the sizes and styles of the Moline plows which the shares so marked fit, and the Star Company may use them for that purpose on its replacement shares on condition, but not otherwise, that it stamps or stencils on each share in plain bold letters of equal style, size, and prominence, except that the letters in the word "Not" shall be twice the height and size of the other letters, the words "Not made by Moline Plow Co., but by Star Manufacturing Company of Carpentersville, Illinois."

Let the second paragraph of the decree be amended, so that it shall read: "It is further ordered and decreed that the defendant be, and the same is hereby, perpetually enjoined and restrained from directly or indirectly selling, or offering for sale, or otherwise dealing in, plowshares made by the Star Manufacturing Company of Carpentersville, Illinois, or others, fitted to replace plowshares on plows made by the Moline Company and bearing thereon the marks consisting of the monogram 'M. Co.' standing in association with the figure of a star, or the monogram 'M. Co.' standing separately, or the representation of a star standing separately. But the defendant is not forbidden to sell or deal in plowshares made by the Star Com-

pany fitted for use on plows made by the Moline Company bearing such stock marks of the latter company as 'W. H. 16,' 'H. 116,' 'W. 14,' denoting merely the sizes and styles of its plows or shares, on condition, but not otherwise, that there are stamped or stenciled on each of said shares in plain bold letters of equal size and height, except that the letters in the word 'Not' shall be twice the size and height of the other letters, the words 'Not made by Moline Plow Company, but by Star Manufacturing Company of Carpentersville, Ill.,' nor is the defendant forbidden to sell such plowshares made by the Star Company fitted for use on plows made by the Moline Company as it has on hand in stock, provided it shall securely cover and conceal the monogram 'M. Co.,' the star, and any other letters or marks thereon tending to lead purchasers to buy them for plowshares made by the Moline Company"—and let the decree so amended be affirmed.