DR. PETER H. FAHRNEY & SONS CO. v. RUMINER et al.

(Circuit Court of Appeals, Seventh Circuit.   April 16, 1907.)

No. 1,343.

**1. TRADE-NAMES—NAMES OF MEDICINES—UNLAWFUL COMPETITION.**

Complainant manufactured and sold a patent medicine made from herbs, which since 1888 had been known and widely advertised as "Alpenkrauter." After its sale became successful, defendants advertised a similar remedy under the name "St. Bernard Alpen Krauter." *Held*, that defendants' use of such term constituted unfair competition.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, §§ 79, 82.]

**2. SAME—INJUNCTION—LACHES.**

In a suit to enjoin further use of the name of defendants' patent medicine as unlawful competition, complainant's inexcusable laches was not a defense to its right to an injunction restraining defendants' future misconduct.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 95.]

**3. SAME—RIGHT TO RELIEF—UNCLEAN HANDS.**

Complainant and its predecessors since 1888 manufactured and widely advertised and sold a patent medicine, called "Alpenkrauter," as a blood purifier, claimed to cure a great number of diseases, which in fact it did not do. The public was cautioned not to consult physicians nor druggists, because the medicine was not for sale there, and, while it claimed that the medicine was composed in part of imported herbs, complainant's witness refused before the master to disclose the ingredients of the medicine or to state from what herb houses or firms the herbs were purchased. *Held*, not to show that complainant did not come into equity with clean hands, and was therefore not entitled to relief against defendants' unfair competition by the sale of another medicine under a similar name.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trade-Marks and Trade-Names, § 94.

Unfair competition, see notes to Scheuer v. Muller, 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

**4. WITNESSES—QUESTIONS—REFUSAL TO ANSWER.**

Where a witness is apprehensive that some wrong will be done to his personal or property rights, he may refuse to answer before a master any question propounded, and stand on such refusal until the question raised has been determined by the court.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 50, Witnesses, § 616.]

**5. EQUITY—REFERENCE TO MASTER—EVIDENCE—OBJECTIONS—WAIVER.**

Where a witness refused to answer a question propounded on a hearing before a master, and the question was certified to the court, but the proponent failed to press the motion to compel the witness to answer, he waived his right to an answer.

Appeal from the Circuit Court of the United States for the District of Indiana.

The appellant (complainant in the court below) sought by its bill to restrain the appellees from using as a trade word the words St. Bernard Alpenkrauter; averring that the use of such trade words by appellees, upon appellees' bottles, and in their advertising, is in the nature of unfair competition with appellant's medicines, sold for the same ailments, and known as Dr. Forni's Alpenkrauter.

The Master found that appellant was an organization existing under the laws of the State of Illinois; that appellees were citizens and residents of the State of Indiana; that appellant manufactured and sold a blood purifier;

that in this business they succeeded their father, Peter Fahrney, who in turn had succeeded his father Jacob Fahrney, who in turn had succeeded his father Peter Fahrney—the latter of whom manufactured and sold in Maryland, Pennsylvania and Virginia, a blood remedy made from herbs; that about 1888 the term Alpenkrauter was given to this remedy; that there is spent annually, for the advertising of this remedy about eighty thousand dollars; and that appellees' use of the words St. Bernard Alpenkrauter is unfair competition.

The Master stated his conclusions of law as follows:

1. The defendants' use of the words "St. Bernard Alpen Krauter" is unfair competition.

2. The complainant is entitled to the injunctive relief prayed in the Bill of Complaint unless it should be denied such relief for either one of the following reasons: (a) the complainant has not come into Court with clean hands and (b) the complainant is not free from laches.

But each of these reasons is, in my opinion, well founded, and because of each of these reasons complainant should be denied relief in this suit. As to reason (a); complainant's representations in its advertising matter practically guarantee that its medicine, Alpen Krauter, will cure—bring about the regaining of perfect health by the person using the remedy according to the printed directions on the carton—all the diseases named on complainant's carton. Such a remedy would be a miracle worker. These representations are coupled with the cautionary advice to intending patrons which, fairly interpreted, comes to this: Do not consult a physician and do not take counsel of a druggist, avoid a medical diagnosis of your ailment, ignore the recommendation of a trained pharmacist and use a 'secret remedy, the ingredients of which cannot be ascertained by chemical analysis and which ingredients the proprietor declines to reveal. In view of the public policy of this State on the subject of the practice of medicine and pharmacy as expressed in legislative enactment, 3 Burns' Ann. St. 1901, §§ 7318 to 7322 and 8136a to 8136g— notwithstanding sale of proprietary medicines is permitted in these statutes— and in view of the provisions of section 1995 of Burns' Ann. St. 1901, which makes it a criminal offense for one to prescribe a secret drug or medicine, the true nature of which he, if inquired of, does not truly make known and thereby endangers life, it must be said of complainant's methods that while they gain success commercially, ethically they are reprehensible; that while they may bring relief to credulous hypochondriacs they, notwithstanding, suggest, none the less, the ways of a thaumaturgist; that while they protect a recognized property right, they do not square with the doctrine of clean hands.

As to reason (b); after complainant had received from the present defendants a flat refusal to cease to use the name St. Bernard Alpen Krauter and notwithstanding the defendants did continue in the use of such name to the damage of the complainant in the sum of several thousand dollars, the complainant waited for more than four years before bringing suit against the defendants. The facts make applicable the rule on the subject of laches stated in the case of Prince's Metallic Paint Co. v. Prince Manfg. Co., 57 Fed. 938, 6 C. C. A. 647.

And upon these findings, recommended that the bill be dismissed for want of equity, which in the Circuit Court, upon the hearing of the case, was done. Further facts are stated in the opinion.

Chester Bradford, for appellant.

John E. Iglehart, for appellee.

Before GROSSCUP, BAKER, and KOHLSAAT, Circuit Judges.

GROSSCUP, Circuit Judge, after stating the facts, delivered the opinion:

We are of the opinion that the Master was not in error when he found that the use of the words St. Bernard's Alpenkrauter was unfair competition; and we concur with him, that unless relief on account of unclean hands or laches is denied, the injunctive relief prayed for

ought to have been granted. This reduces this case to the questions, Did appellant come into court with unclean hands? And, was he free from laches?

The second of these questions is easily disposed of. The appellee, Otto Kunath, was appointed April 3rd, 1890, one of the agents for the sale of appellant's medicines, and continued as such until 1895, whereupon, in association with the other appellees, he began the manufacture and sale of the St. Bernard Alpenkrauter; and thereupon, on the 26th of December, 1896, a letter was written to him by appellant, asking a discontinuance of the use of that name, and suggesting that court proceedings would follow unless the request was observed; to which appellees replied January 19th, 1897, that they declined to drop their present form of advertising. Thereafter nothing was done until March 7th, 1901, when the bill in this case was filed. And this is the laches complained of.

McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, was a case to restrain the infringement of a trade-mark upon a certain medicine in which it was held that acquiescence of long standing, and inexcusable laches in seeking redress, was no defense against that part of the prayer of the bill that sought to restrain an infringement in the future. And this ruling was expressly reaffirmed in Menendez v. Holt, 128 U. S. 514, 9 Sup. Ct. 143, 32 L. Ed. 526. Whether the delay shown here is a defense against the recovery of any damages for the past is a question that we are not now called upon to decide; for the decree appealed from dismissed the whole bill for want of equity, including the prayer for injunctive relief.

Upon the subject of unclean hands, it is our opinion that the conclusion of the Master is not supported by his finding of facts. It is true that the remedy was advertised by appellant as a cure for more diseases, perhaps, than any remedy could possibly cure. But this, in itself, is not unclean hands. Proprietary medicines, generally, promise more than they do; and for that matter licensed physicians often do the same. And with proprietary medicines, as with physicians, the object often is to give mere temporary help, under the belief of the patient that he is obtaining a cure. But whether this be an improper use of the public's confidence, or constitutes a practice against public policy, is a question to be decided by the state, through its legislature, and not by the courts under the equitable doctrine of unclean hands; for so far as this case discloses, proprietary medicines are lawful commerce, and are to be given the freedom of mere trade boasting that ordinary commerce is allowed to enjoy.

It is also true that the name Alpenkrauter connects the herb out of which it is made, in the imagination of the purchaser, with the Swiss Alps. But this is not holding out to the public that the particular root that went into the medicine was grown on the Alps. Indeed the representation in the advertising was that only a part of the herbs were imported, and a part were grown by Quakers in this country. There is therefore, in this particular, no such deception as constitutes unclean hands.

It is true also, that when appellee on cross-examination, seeking probably to find out whether any of the herbs were imported, asked

of one of the appellants what were the ingredients of the medicine, that the witness was instructed not to answer; and that when the further questions were put of what particular herb houses or firms the herbs were purchased, the witness was again instructed not to answer; from which the Master draws the inference that the herbs were not, in fact, imported; otherwise the questions would have been answered.

But all the facts of this case borne in mind, the inference drawn by the Master is not·tenable. True, the witness may have been instructed not to answer, because a truthful answer would have divulged that no part of the herbs were in fact imported, or would have given a clue to the names of witnesses from whom that testimony might have been obtained. But it is equally obvious that the motive of the refusal to answer might have been an apprehension that if the ingredients were disclosed, or there was disclosed the names of the people from whom the ingredients were purchased, the whole value of the medicine as a secret preparation would be destroyed—a danger that the appellant was not willing to incur unless ordered by the court. And though a motion to compel an answer was filed, the hearing of that motion was continued to the final hearing, at which time it was not pressed. Now it is the right of a witness, apprehensive that some wrong will be done to his personal or property rights, to refuse to answer to a Master, any·question propounded, and to stand upon that refusal until the question raised has been determined by the court; and when such refusal is followed by the failure of the other party to press the question in court, the legal inference is not that the facts are as the proponent claims them, but rather, the proponent failing to press the motion, that he acquiesces in the right of the witness to refuse to answer—the record thereafter standing as if no such question had been put.

It is true, too, that in their advertising, appellant advised the public not to inquire for the Alpenkrauter at drug stores. But this does not justify, it seems to us, the inference drawn by the Master that it was meant as counsel not to consult a physician, and to ignore the recommendations of a trained pharmacist—the plain motive for the suggestion being, that the Alpenkrauter was not on sale at drug stores, and that to inquire for it would result in no purchase of appellant's medicine, but might lead to the inquirer's being induced to purchase something else. Surely, so long as proprietary medicines are lawful commerce, precautions of this kind, obviously commercial, are not within the doctrine of unclean hands.

That the whole traffic in proprietary medicines may be injurious to the public; that remedies, the ingredients and formula of which are secret, should be forbidden; that the sick and ailing should be protected against every offer of help except those coming from licensed physicians and pharmacists, are each questions that the public can take up and decide for itself, through the legislative branches of its governments; but that not having been done as yet, by the public will thus expressed, it does not seem to us that the facts in the record before us furnish a reason why the courts should formulate a public

policy, or withhold the aid of the law to protect this commerce, as yet lawful, against the unlawful piracy of another.

The decree appealed from will be reversed, with instructions to grant the injunction as prayed for in the bill.