### BEATTIE MFG. CO. v. SMITH et al.

(Circuit Court of Appeals, Second Circuit. June 23, 1921.)

No. 229.

1. **Patents ☞328—713,230, for inturning edges of collar blanks, held valid and infringed.**
Maitland and Beattie patent, No. 713,230, for an improved machine for inturning the edges of fabric blanks in the manufacture of collars and cuffs, *held* valid and infringed, it being a decided improvement in the art, not anticipated by anything in the prior art.

2. **Patents ☞328—972,272, for separate heating of bed-plate infolders in collar folding machines, held infringed.**
Smith patent, No. 972,272, for the separate heating of the bed-plate infolders in machines for folding collar and cuff blanks, *held* infringed,

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and the evidence insufficient to show that the infringer's predecessor in business employed similar heating units in such folders prior to the application for such patent.

3. Patents ⟨⇒328—972,320, for expanding and contracting dies in collar folding machines, held valid.
 Beattie patent, No. 972,320, for automatically expanding and contracting the die in collar folding machines, *held* valid, as indicating invention.

4. Patents ⟨⇒328—972,495, for incorporating heating resistance coils in folders of collar folding machines, held valid.
 Beattie patent, No. 972,495, for incorporating heating resistance coils in the folders of collar folding machines, *held* valid, there being nothing anticipatory in the prior art.

5. Patents ⟨⇒328—1,071,677, for producing circular movement of infolders in collar folding machines, held valid.
 Maitland and Beattie patent, No. 1,071,677, for moving the infolders of collar folding machines in a circular path, *held* valid and infringed.

6. Patents ⟨⇒289—Mere laches will not bar relief on final hearing in infringement suit.
 Though knowledge of the infringement of a patent and long-continued acquiescence therein may be fatal on a motion for a preliminary injunction, it will not prevent the court from granting such relief as may be just and equitable on final hearing; mere laches, unaccompanied by circumstances, amounting to an equitable estoppel, not shutting out a party from all relief in a court of equity.

Appeal from the District Court of the United States for the Northern District of New York.

Suit by the Beattie Manufacturing company against Margaret D. Smith, trading and doing business under the name and style of the E. H. Brown Manufacturing Company, and another, for infringement of patents. Decree for complainant (266 Fed. 701), and defendants appeal. Affirmed.

Harry Hayward Allen, of Washington, D. C. (Samuel S. Watson, of New York City, of counsel), for Margaret Heald Smith.

Frank C. Curtis, of Troy, N. Y., for appellee.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. This suit is for infringement of patents Nos. 713,230, 972,272, 972,320, 972,495, and 1,071,677. They all relate to folding machines. Each patent was sustained, and the appellants were held to infringe, in the court below. We shall treat each patent separately and in the order as above.

[1] Patent No. 713,230 was issued on November 11, 1902, to John Maitland and William J. Beattie, the appellee's assignors, and is for a machine for folding collar blanks. The invention relates to improvements in the machine for inturning the edges of fabric blanks in the manufacture of collars and cuffs, and particularly the style of machine used for folding collars. The object of the invention is to simplify the construction of such a machine and to facilitate the adoption of the same to different sizes and styles of blank. Claim 3 only is in issue. It provides as follows:

⟨⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"(3) In a folding machine, former mechanism comprising in part a former-plate and a former-block split part way of its length, one member thereof being bent to conform to the edge of said former-plate and secured thereto, and the other member being provided with means for securing the same to a supporting member of said former mechanism, substantially as described."

This feature of the machine is for the supporting of the thin sheet metal die plate or former-plate which determines the shape of the folder blank, and over the edge of which the edge of the blank is inturned by the folders. The former plate is a very thin sheet metal, and requires an immediate support to which it is attached. It is constructed so that the support can be readily mounted upon the die-head or former-head of the machine. The die-head is provided with a slide-way or seat, which is adapted to interchangeably receive and support the former-blocks for all forms of former-plate. The former-plates must differ in outline according to the blank to be folded. The former-block which is attached to the die-head must always be the same in order to be interchangeable with the other former-blocks, and the portion of the former-block to which the thin former-plate is directly attached must conform generally to the form of the edge of the particular thin former-plate. The former-plates thus adapted for folding the bands of collars are narrow and very irregular in outline, and the task was to machine a solid piece of metal onto a former-block of such necessary complex shape that one portion of it would be of standard form interchangeable with other former-blocks in attachment to the die-head. The portion to which the irregular former-plate is directly attached must conform to the shape of the thin former-plate. This was a difficult and expensive task, but the inventor accomplished this by splitting the former-block partway of its length, having one of the members thus formed left in its original straight form, while the other member was made so as to readily bend to conform to the shape of the former-plate which is to be attached to it. This was done by bending this member of the split former-block without machine work upon it. The result is that all the former-blocks have the members whereby they are attached to the die-head of the same shape and dimensions, while the other members to which the thin former-plates are attached can be made of different forms, in each case corresponding to the shape of the former-plate to be attached thereto. The art shows that for many years the makers of folding machines had felt obliged to separately fashion the whole folder-block for each particular form of folder-plate. This consumed time and required labor and expense. The inventor has overcome this, thus eliminating a great deal of loss of time and labor. These machines are equipped from time to time with differently shaped templets corresponding to the shapes of the respective blanks to be folded in making different styles of collars. The thin sheet metal templet plates riveted to the heavy metal blocks, which blocks in turn are removably mounted upon the die-head, which swings outward and from the bed of the machine, make possible the interchangeability of templets varying greatly in shape. If a solid block be employed to conform to the shape of and support each of these dif-

ferent irregular forms of templets, these different supporting blocks would have to be attached to different parts of the die-head. By employing a split former-block, the inventor was able to accomplish what had been previously considered impossible. He did this by attaching the different folder-blocks interchangeably always to the same points of the die-head, while also having the folder-block conform in each case to the particular form of the templet plate employed, no matter how irregular its shape.

There is infringement in the manufacture and use of appellants' machine. This is beyond question. What was accomplished was a decided improvement in the art. Nothing in the prior art anticipated it. We think this patent is valid and infringed.

[2] Patent No. 972,272 is dated October 11, 1910. The application was filed February 14, 1908. The inventor is George W. Smith, appellee's assignor. It is for a folding machine. It relates to machines for folding collar and cuff blanks. The object of the invention was to construct a folding machine in which the bed-plate infolders will be heated by electricity, and that one operation of the foot pedal will cause the head of the machine carrying the die to press down upon the goods, and cause the infolders to fold the edges of the goods over the die, and also press the bed of the machine forward against the infolders, thus pressing the fold smoothly and uniformly over the edges of the die while the die remains within the fold. By removing the pressure from the foot pedal, the infolder is moved backward from over the die, and the head of the press carrying the die will move upward from the bed of the press, leaving the operator the free use of both hands for handling the goods. The prior art shows no disclosure of separate means for heating the bed and for heating the infolders. Claims 1, 2, and 7 are involved, and read as follows:

(1) In a folding machine, a rigid frame, a bed-plate movable within the frame, means within the bed-plate for heating the same, a die-plate adapted to co-operate with the bed-plate for clamping between them a blank to be folded, slidable infolders for folding the edges of a blank over the die-plate, each folder being provided with means for the insertion of heating means. means for simultaneously operating the infolders, and means for pressing the bed-plate and die-plate into co-operative relation, turning the edges of the blank over said die, and forcing said bed and die against the infolders to press the turned edges of the blank.

(2) In a folding machine, a rigid frame, a bed-plate movable within said frame, means for operating the bed-plate, means within the bed-plate for heating the same, a die-plate adapted to co-operate with the bed-plate for holding a blank on the bed-plate, infolders for turning the edges of the blank over the die-plate, each infolder being provided with means for the insertion of heating means independent of the bed-plate heating means.

(7) In a folding machine, a rigid frame provided with a bed-plate adapted to be heated, a movable die arranged to clamp blanks to be folded on the upper surface of said bed-plate, infolders adapted to turn the edges of said blank over the edge of said die, and means for producing pressure between the bed-plate and the die and infolders, each of said infolders being provided with means for the insertion of heating means separate of the bed-plate heating means.

The invention permits the infolders to be more highly heated than the bed. This is desirable. Having the infolding elements heated to

the highest temperature which can be employed without scorching the goods is very desirable. In the folding operation the blank is in contact with the bed for a longer period than it is with the infolders, because the blank must be laid upon the bed before the infolders move in over the edges of the blank, and cannot be removed from the bed until after the infolders have been fully withdrawn. It would therefore be safe to have the infolders more highly heated than the bed, because they are in contact with the blank for less time than the blank is in contact with the bed. The claims are not limited to any particular form of heating mechanism, electric or otherwise. The testimony shows that, prior to the date of the application of this patent, Simplex heating units had been commonly known, and could be obtained from the Simplex Heating Company of various sizes, as might be desired. They comprised each a casting hollowed out to receive the electric resistence coils embedded in a bed of insulating material, and these units could be mounted by means of bolts upon a desired part of the machine. The patent provides in its specifications that the underside of the infolders have hollow spaces adapted to receive suitable heating means. A box is provided attached to the underside of the bed-plate, in which are placed suitable resistance coils for generating heat by electricity. And it is immaterial whether the box is of hollow casting of an electric heating unit such as the Simplex heating unit, or whether it is a box forming a chamber into which a complete electric heating unit is installed. The electric heating mechanism in the bed of the appellant's top machine comprises an electric resistance coil placed in a recess formed in the underside of the bed-plate and closed by a bottom plate which is clamped to the bed-plate. The ends of the coil project down through the bottom plate, where they are connected with the circuit wires. Thus the bed forms the box or head-plate for the coil instead of having the coil embedded in a separate and complete heating unit. This falls within the claims which provide "means within the bed-plate for heating the same."

We think the appellant's structure falls within the description of each of the claims and infringes the same.

We agree with the court below that the effort to show that one Brown, the predecessor in the business of the appellant, Margaret Heald, did in 1902 or 1903 employ Simplex or similar heating units in the folders of a folding machine, is not satisfactory to establish that fact. The correspondence indicates that it was not until 1908 that Brown learned how to make such a heating unit satisfactorily.

[3] Patent No. 972,320 is dated October 11, 1910, and was issued on the application filed on May 21, 1908. The inventor is William J. Beattie, the assignor of the appellee. This invention relates to two machines of the same type, for folding collar and cuff blanks. The object of the invention, as given by the patentee, is to construct a machine the folder plates of which will be heated, and the folding and pressing of the goods will be over the edge of the die, while the die is upon the blank on the bed-plate of the machine. Claims 6 and 8 are involved, and are as follows:

(6). In a machine for folding collar and cuff blanks, a vertically movable bed-plate, a die of thin sheet material comprising a fixed section and a slidable section, said die adapted to clamp blanks upon the bed-plate, slidable folder plates adapted to fold the edges of said blanks over the edges of said die, means for raising the bed-plate to press the folded blanks against the folder plates, means for supporting and lowering said die, and connections operated by said means for moving the slidable die section endwise to lengthen the die as said die is lowered.

(8) In a machine for folding collar and cuff blanks, a die therefor of thin sheet material formed of a plurality of sections, one of which is slidable longitudinally of the die, a swinging die-head supporting said die, means engaging said slidable die section to move the same, and a connection attached to said moving means and hinged to a fixed part of the machine eccentric to the axis of oscillation of the die-head.

The construction here is for automatically expanding and contracting a partly collapsible die. The new improvement in the art accomplishes a very material saving of time in the folding operation. By automatically expanding the die to full dimensions by the downward movement of the die into engagement with the blank on the bed, thus permitting the die to remain expanded throughout for the folding and pressing operations, and automatically contracting one end of the die by the upward movement of the die as it rises from the bed with the folded and pressed blank retained upon the die plates, the inventor accomplishes the improvement.

The movement of the movable member of the templet is accomplished in one direction by a swing and in the opposite direction whereby the templet is expanded to maximum dimensions by means of a cam actuated by a link or rod pivoted upon the frame of the machine eccentrically to the axis of oscillation of the die-head. The appellant infringes this invention, but it is sought to escape infringement by reference to the prior art patents, in which eccentric mechanism has been employed to expand or contract a collapsible die or templet for the purpose of withdrawing the templet from the folded edges of the blank before they are pressed. The prior art does not suggest expanding the die as it is lowered upon the bed, keeping it expanded not only during the pressing operation as well, but using it as a means for lifting the blank from the bed, and then contracting the die to permit a removal therefrom of the folded and pressed blank. This is accomplished by the present patent. The best reference referred to is Fenwick's patent, No. 688,400. The vital difference is that in the prior art patents the die contracting and expanding mechanism was so constructed as to contract the movable templet plate or plates out from the infolding edges of the blank before those infolding edges were pressed, and in none of these do they show a construction employing a movable templet plate which remains within the folded edge of the blank during the pressing operation, and then serves to raise the folded and pressed blank from the bed, and therefore is automatically withdrawn from the infolded edge of the blank to release the blank. In this respect, the improvement is new. The fact that these advantages seem to be much appreciated by the trade, and that this new method of folding has rendered obsolete the prior method of collapsing the

die before the folding operation, is strong evidence of an advance in the art, and we think indicates invention.

[4] Patent No. 972,495 is dated October 11, 1910, and was issued and granted to W. J. Beattie, the assignor of the appellee, on an application filed August 15, 1908. It relates to machines for folding collar and cuff blanks. The object of the invention was to construct a folding machine, the infolders of which will be heated, and the folding and pressing of the goods will be over the edges of the die while the die is upon the blank on the bed of the machine. This patent relates to the Smith patent, No. 972,272, because it has to do with the most practical means for incorporating the heating resistance coils in the folder. It was found that the Simplex heating units had to be made with thick castings, and that they were slow in conducting the heat to thin sheet metal plates mounted on the infolder blocks. The problem was to make the folder itself the housing for the resistance coils instead of incorporating the coils in a separate complete unit to be attached to the folder block. By dividing the folder block into two parts, separately screwed or bolted together, one or both of the members thus formed was hollowed out forming, between the members, a chamber. The coil was mounted within this and projected out from beneath the two block members. Thus the inventor accomplished this problem. Claim 1 is involved, and reads as follows:

(1) In a machine for folding collar and cuff blanks, a heated bed-plate, a die adapted to press blanks upon said bed-plate, infolders adapted to move inwardly and fold the edges of the blanks over said die, each of said infolders being chambered and formed in two parts separably connected together, and an infolder plate attached to one of said parts, electric heating means within said chambers adapted to be supplied with current by electric wires from without, whereby the infolder plate of each infolder may be independently heated, means for moving said infolders to fold blanks over the die, and means for pressing the said blanks between the heated bed-plate and the folder-plates.

In appellant's machine we find each infolder blank comprising a casting hollowed out on its underside, the thin bottom plates to complete the closing of the chamber for the heating coil. The bottom member of the folder-block is thinner than the bottom member of the folder-block shown in this patent, but it has in the appellee's device the appellant's two members complete—the chamber which receives the heating coils in substantially the same manner called for by the claim. There is a difference in the form of the two members of the folder-block by the fact that the terminals of the coils are led out from between the block members at the end instead of at the side of the folder-block. But this does not avoid the claim of the patent in suit. We find nothing in the prior art which anticipated what was here accomplished.

[5] Patent No. 1,071,677 was dated August 26, 1913. It is on an application filed by Maitland & Beattie, appellee's assignors, on August 18, 1905. It relates to an improvement in a machine for folding collar blanks, and consists of a novel construction and combination of parts. The invention relates to automatic and power machines as

distinguished from hand machines. It includes a bed and means for folding certain sides of a collar or cuff blank on one of the plain surfaces of the bed and the others parts on the under surface of the bed, whereby a much narrower blank, such as is used for the blanks of some collars, can be folded than is possible with a folding machine which folds all sides of a blank simultaneously. The edges of the fabric blanks are inturned or folded over the former-plates by means of folder-plates movable to and fro on the surface of the bed, after which the former-plates movable to and fro on the head, commonly called folder-heads, withdraw from the folders, and the folders press between the folder-plates and the body to fold and press the edges of the blanks; the operation of the former or folder-plates being the same as that of hand machines formerly used. Claims 8 and 9 are involved, and are as follows:

(8) In a folding machine, the combination with two folder-plate sections, on one side of the machine, provided with a slide connection extending lengthwise of the plate sections, of a single actuating crank connected by a close-fitting connection with each section, whereby a circular motion is imparted to the plate sections, and means for operating the cranks, substantially as described.

(9) In a folding machine, the combination with two folder-plates adapted to fold one side of a blank and portions of two other and oppositely disposed sides, of a slide-connection between the plates extending lengthwise of their neighboring parts and transversely of the other parts which are adapted to fold portions of the opposite sides of the blank, a plate-actuating crank connected by a close-fitting connection with each of such folder-plates, whereby a circular motion is imparted to the plate sections, and means for operating the cranks, substantially as described.

By moving the infolder in a circular or arcuate path, the infolders at a corner of the collar can be overlapped in any desired direction and at any desired angle of one side edge of the blank with respect to the inbearing end edge of the blank. With the circular movement of the inventor's infolder, the infolder can be moved through an arc of 90 degrees, and, in case of an acute angle corner in a blank, the throw of the eccentric can be eliminated so that the last folded edge on the side or end of the blank, as it may be, is not thrown out beyond the outer edge of the blank. This shows novel construction that is made within the claims. The crank for each folder exercises, through the sliding connection, a controlling and guiding effect upon the other folder in accomplishing the circular movement. There is nothing in the prior art which shows such a relationship or result, nor is such a result accomplished. The principal prior patent relied upon is Fenwick's, No. 688,462. But Fenwick provides for a movement in two straight lines, one at right angles to the other, while the very essence of the construction set forth in the patentee's claim here is the production of a circular movement. The claims make this statement. There are no equivalents between the two mechanical devices provided for in this patent and in Fenwick's. They do not accomplish the same result, because the machine of the patent in suit produces a circular movement of the infolders, while the essential movement of the Fenwick patent is two straight line movements at right angles to the

other, or an L-shaped movement. Nor do they operate in the same manner. In producing the curved movement of the machine in the patent in suit, the eccentric guides the infolders along the curved path, while in the Fenwick machine the cranks have no guiding function with respect to the infolder, but merely push them inwardly and outwardly.

We think as to each of the patents in suit the appellee is the sole owner thereof, and that the appellant infringes the claims of each of the patents sued on.

[6] A defense of laches is interposed. Mere laches, unaccompanied by circumstances which amount to an equitable estoppel, will not shut out a party from all relief in a court of equity. On an application for a preliminary injunction, knowledge of the infringement and long-continued acquiescence therein may be fatal on a motion for such an injunction. However, on final hearing, it will not prevent the court from granting such relief as may be just and equitable. Taylor et al. v. Sawyer Spindle Co., 75 Fed. 301, 22 C. C. A. 203. There is no testimony in this record which justifies the claim that the appellee is guilty of any laches which would justify a court of equity refusing to grant the relief prayed for in this bill of complaint.

We think these various patents have done much to advance the art, and the claims which we have found are infringed should be accorded the full rights of monopoly which were granted by the issuance of the patent in each instance.

Decree affirmed.