## TOURAINE CO. v. F. B. WASHBURN & CO.

(Court of Appeals of District of Columbia. Submitted January 8, 1923. Decided February 5, 1923.)

No. 1535.

1. **Trade-marks and trade-names and unfair competition** ⬡⟳44—**Evidence held to show opposer had not used mark as a trade-mark.**

    Evidence *held* to show that the company opposing the registration of the word "Touraine" as a trade-mark for candy had not used that word as a trade-mark prior to its adoption by the applicant, but had used it only as a mark of grade or quality.

2. **Trade-marks and trade-names and unfair competition** ⬡⟳43—**Use of word as trade-mark does not establish damage to user as grade indicator.**

    The mere use of a word as a trade-mark does not prove likelihood of damage to one who had previously used the word in another capacity, for instance, as an indicator of grade or character, so that the one using it as a grade indicator cannot oppose registration as a trade-mark without showing damage.

3. **Trade-marks and trade-names and unfair competition** ⬡⟳43—**Trade-mark use by opposer unnecessary, if he can show damage.**

    To entitle a person to oppose the registration of a trade-mark, it is not necessary that he shall have previously used a similar mark as a technical trade-mark, but it is sufficient if he can establish that the subsequent use of the trade-mark by the applicant will result in damage to him.

Appeal from the Commissioner of Patents.

Application by the Touraine Company for registration of a trade-mark, opposed by F. B. Washburn & Co. From a decision of the Commissioner of Patents refusing to register the trade-mark, the applicant appeals. Reversed.

Ellis Spear, Jr., of Boston, Mass., for appellant.

D. P. Wolhaupter, of Washington, D. C., for appellee.

Before SMYTH, Chief Justice, ROBB, Associate Justice, and SMITH, Judge of the United States Court of Customs Appeals.

SMYTH, Chief Justice. The Commissioner of Patents, on the opposition of F. B. Washburn & Co., refused to register to the Touraine Company the word "Touraine" as a trade-mark for candy and confections, including chocolates, etc., and the latter company brings the proceeding here for our review.

Both parties are engaged in the manufacture of candy, one in Brockton and the other in Boston, Mass., which they sell to wholesalers and jobbers. A grocery company adopted the mark in 1906, and the next year conveyed all right to it to the Touraine Company. From the time of the conveyance the latter company has used it as a trade-mark for all its products. Opposer is entitled to 1897 as the date on which it

---

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

commenced the use of the mark. It was, therefore, undoubtedly the first to adopt and use it.

But was its use a trade-mark use, or only a piece or grade mark use, to indicate the ingredients of the piece to which it was attached? Opposer put out over 200 different pieces or mixtures, but the word "Touraine" was applied to only one, and in the following manner:

Whenever a wholesaler desired a piece of a certain kind, he ordered it by its appropriate name. Opposer had two registered trade-marks, one of which, "Waleco," and a seal, are displayed on the above specimen. If the word "Touraine" was used as a technical trade-mark, then there were two such marks on the package. Opposer's superintendent for 25 years said the word "Touraine" referred distinctly to the grade or quality of the chocolate. Another employé, who had been in opposer's service for 7 years and in charge of the chocolate room for about 4 years, testified to the same effect. An employé of 22 years' service declared that the Waleco trade-mark was used *on all the opposer's goods,* so far as she knew. The opposer at times sold goods procured from the applicant, with the mark "Touraine" on the packages. For 14 years, with full knowledge of the use of the mark by applicant, the opposer made no objection to its use. Many years ago the applicant requested the opposer to refrain from the use of the mark. It refused to do so, for the stated reason that it had been using the mark for a long time, but agreed not to apply it to any kind other than the chocolate piece. This was testified to by a witness who worked for 25 years for the opposer, and had risen from the position of office boy to the rank of general manager. True, he had been discharged by the opposer; but this does not weaken his testimony, because he describes exactly what was done, according to the other witnesses, by the opposer, so far as the use of the mark is concerned.

It appears no one connected with the opposer thought of claiming the word "Touraine" as anything more than a grade mark, until one Miner, who joined the company in 1916, "originated the opposition," to use his own words. He was prompted to do so by a notice in a bulletin that the applicant had asked for the registration of the word. This was about four months before he testified. The label copied above discloses that the word "Touraine" is not used alone, but in connection with the two words "Chocolate Mixture." Opposer spent no money in advertising its candy under the name of "Touraine," while applicant

spent over three-quarters of a million in advertising its products under that name.

[1, 2] Considering all these facts, we are satisfied that the opposer never used, or thought of using, the word as a trade-mark until Miner appeared upon the field, and that was many years after the applicant had adopted and applied it to its entire output. It was used by the opposer to indicate the character of the chocolate, not the origin of it. The distinction between a technical trade-mark and a device to denote style or quality is pointed out in Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 546, 11 Sup. Ct. 396, 34 L. Ed. 997; and Columbia Mill Co. v. Alcorn, 150 U. S. 460, 14 Sup. Ct. 151, 37 L. Ed. 1144. The mere use of a word as a trade-mark does not prove likelihood of damage to one who uses the mark in another capacity, for instance, as a grade indicator. Since opposer has no other proof of probable damage its opposition should have been dismissed.

[3] The Patent Office in upholding the opposition appeared to rely on our decision in Atlas Underwear Co. v. B. V. D. Co., 48 App. D. C. 425, but we do not think it supports the conclusion reached. Of course, a trade-mark use of a mark is not necessary in a proceeding of this kind. If the opposer can show in any way that he would probably be damaged by its registration to the applicant he may do so. The trade-mark statute (section 6, 33 Stat. 726 [Comp. St. § 9491]) is our chart. There is nothing in it which says that a person must own a trade-mark, registered or not, before he can oppose the registration of the mark to another person. All that the statute requires of him, according to our interpretation, is to prove facts which, if true, would tend to show that he would probably be damaged by the registration. Skene v. Marinello Co., 270 Fed. 701, 50 App. D. C. 265; McIlhenny Co. v. Trappey, 277 Fed. 615, 51 App. D. C. 216.

Opposer relies on Nairn Linoleum Co. v. Ringwalt Linoleum Works, 46 App. D. C. 64, but there is nothing in it which conflicts with the views we have here expressed. It declares that it is permissible for one who has used a word as a trade-name to make opposition to its registration as a trade-mark. Undoubtedly this is correct. But it does not follow that the mere fact that he has used it as a trade-name establishes that he would be damaged by the registration of the same name as a trade-mark. He may continue to use the word as a trade-name, notwithstanding its registration to another as a trade-mark.

The opposer in this case having failed to prove that it would probably be damaged by the registration of the mark, we must reverse the decision of the Commissioner; and it is so ordered.

Reversed.