## REID, MURDOCH & CO. v. H. P. COFFEE CO.

### No. 8867.

Circuit Court of Appeals, Eighth Circuit.

March 4, 1931.

Rehearing Denied April 17, 1931.

STONE, Circuit Judge, dissenting.

Reversed and remanded.

Fred Gerlach, of Chicago, Ill. (Douglas W. Robert, of St. Louis, Mo., on the brief), for appellant.

William H. Schaumberg, of St. Louis, Mo. (Roy M. Eilers, of St. Louis, Mo., on the brief), for appellee.

Before STONE and GARDNER, Circuit Judges, and WYMAN, District Judge.

GARDNER, Circuit Judge.

Appellant, as plaintiff in the lower court, brought suit to enjoin the alleged infringement by the defendant of its registered trademark, and to enjoin certain acts of alleged unfair competition. The material facts as summarized by the lower court are substantially as follows:

As early as August 13, 1878, plaintiff's predecessor registered its trade-mark for baking powder and cream of tartar. This trade-mark consisted of a tiger's head with the word "Monarch" printed or engraved above the tiger's head in large white and enameled letters, with the words "Baking Powder" in an angular scroll below the tiger's head. In 1883 plaintiff's predecessor registered the word "Monarch" similarly printed or engraved, which has been generally used in connection with the head of a lion as a trademark for canned goods and other preserved fruits. In 1886 plaintiff's predecessor registered the words "Monarch Mills," printed in large white Gothic type above a lion's head for the products of its "Coffee and Spice Mills." In 1922 plaintiff registered for practically all of its products, consisting of condiments, canned fruits, coffee, tea, canned meats, canned vegetables, flour, and divers cereals, another trade-mark. This last-mentioned trade-mark consisted of the word "Monarch" printed or engraved in a crescent shape in large black Gothic capitals above its usual lion's head.

Defendant has never registered the word "Monarch" as a trade-mark, but uses this word now on packaged coffee and on coffee sold in sealed cans, printing or engraving the word on either side in black Gothic capitals, so that it appears to simulate fairly closely the word "Monarch" as used by the plaintiff. Defendant has never used either the lion's head nor the tiger's head as a part of this designation. Defendant's predecessors began business in 1853. In 1886 Henry Petring, one of the original organizers, died, and the business was then carried on by two of his sons, one of whom died in 1925, and the other retired from the defendant corporation some two years before the commencement of this action. The predecessors of defendant used the word "Monarch" to designate coffee sold by it and its predecessors as early as 1879. Defendant's predecessors sold in more than a dozen states, including the state of Missouri, large quantities of coffee branded "Monarch" on the containers as early as 1897. In 1907 defendant began to sell its roasted packaged coffee, contained in paper bags, cardboard cartons, and tin cans, extensively by mail, until at the time of the trial of this suit it had a very large business so carried on in many states.

Defendant has never advertised extensively, if at all, while the plaintiff has spent, and is now spending, very large sums of money in advertising its well-known "Monarch" brand of foods, drinks, and condiments. At least since 1907, if ever, the defendant has not used the word "Monarch" to show the origin of its coffee, but since that time, of the twenty odd brands of coffee handled by it, only one was designated as its "Monarch" brand. It never used the word "Monarch" to designate any other of its goods or groceries, save and except coffee, and the word was used as a brand or grade mark, rather than as a trade-mark. Defendant's cans, paper packages, and cardboard cartons used for the coffee sold by it were of a different shape and color from those of the plaintiff. The printing, except as to the word "Monarch," was also dissimilar in shape and color, and the word "Petring's" appeared on all of the defendant's packages.

As early as 1925 numerous retailers of

the defendant's packaged and canned "Monarch" brand of coffee, advertised it in the local papers as "Monarch" with no further identification, for the purpose of palming off a cheaper product for that of the established brand of coffee put out by the plaintiff, and they succeeded in palming off on their customers this cheaper "Monarch" coffee of the defendant for the dearer and higher grade product of the plaintiff. This the retail dealers were enabled to do by reason of the fact that the packages and containers of both plaintiff and defendant bore the word "Monarch." Customers were deceived because of these advertisements which indicated that the coffee advertised was of the "Monarch" brand which had become widely known as the coffee put out by the plaintiff, and in the grocery trade generally, the word "Monarch" had come to mean the products or goods of Reid, Murdoch & Co. This trade-mark had been used by plaintiff only on foods of a very high quality, which, under this trade-mark, had been widely advertised as such by the plaintiff at a very large expense.

While buyers were misled by these acts of the retailers, the defendant did not directly connive with the retailers, except that it used the word "Monarch" as a brand mark for one of its brands of coffee. A careful examination and comparison of the respective containers of the defendant and plaintiff would disclose a dissimilarity, save for the use of the word "Monarch" on both classes of containers.

The court concluded that the plaintiff was entitled to the trade-mark in controversy, but was not entitled to relief in the suit because: (1) Defendant had not connived with the retail merchants, nor participated in the acts of unfair competition, and hence was not responsible therefor; and (2) that the plaintiff, by its laches, was estopped from now complaining of the defendant's use of the word "Monarch." These conclusions of the lower court are challenged by plaintiff on this appeal.

■ It appears that, while the defendant made some use of the word "Monarch" in connection with its coffee, it was not a trademark use, but it was used as a grade mark to designate or identify one of its various grades of cheap coffee. Such use of the name would not entitle it to its use as a trademark. Touraine Co. v. Washburn & Co., 52 App. D. C. 356, 286 F. 1020; Macmahan Pharmacal Co. v. Denver Chemical Co. (C.

C. A.) 113 F. 468; N. K. Fairbank Co. v. Luckel, King & Cake Soap Co. (C. C. A.) 102 F. 327. This, we understand, was the view of the lower court, but, notwithstanding this announced view, both of the parties seek to reargue the question here. We think the lower court was correct in so concluding, and we are of the view that the defendant's use of the word "Monarch" was an infringement on plaintiff's trade-mark. Layton Pure Food Co. v. Church & Dwight Co. (C. C. A.) 182 F. 24; Queen Mfg. Co. v. Isaac Ginsberg & Bros. (C. C. A.) 25 F.(2d) 284, 287; Gordon's Dry Gin Co. v. Eddy & Fisher Co. (D. C.) 246 F. 954; McDonald & Morrison Mfg. Co. v. H. Mueller Mfg. Co. (C. C. A.) 183 F. 972, 974. As said by this court in Queen Mfg. Co. v. Isaac Ginsberg & Bros., supra: "There may be infringement where the substantial and distinctive part of the trade-mark is copied or imitated. * * * Dissimilarity in size, form, and color of the label and place where it is applied are not conclusive against infringement. * * * Where a trade-mark contains a dominating or distinguishing word such as the word 'Queen' in the instant case, and where the purchasing public has come to know and designate the article by such dominating word, the use of such word by another in marking similar goods may constitute infringement, although the latter mark, aside from such dominating word, may be dissimilar."

This court in McDonald & Morrison Mfg. Co. v. H. Mueller Mfg. Co., supra, said: "The test is not whether, when goods are placed side by side, a difference can be recognized in the labels or marks; but the test is, when such goods are not placed side by side, would an ordinarily prudent purchaser be liable to purchase the one, believing that he was purchasing the other?"

It is, however, the contention of the defendant, and the lower court so held, that the plaintiff was not entitled to injunctive relief against it for unfair competition because it had not connived with the retail grocers in their acts of unfair competition. It is true the defendant had no direct part in these acts of unfair competition. The goods, however, as put out by it bore the name "Monarch," and, while it is true the containers bore other distinguishing marks, yet the use of the word "Monarch" furnished the merchants with the means or tools of committing a fraud upon the public. The acts of these retail merchants might well have been anticipated by the defendant. These goods were supplied by the

defendant for the purpose of being resold on the market, and the use of this word "Monarch" by it made it possible for the retail merchants to commit a fraud upon the public to the injury of the plaintiff. N. K. Fairbank Co. v. R. W. Bell Mfg. Co. (C. C. A.) 77 F. 869; Von Mumm v. Frash (C. C.) 56 F. 830; N. K. Fairbank Co. v. Luckel, King & Cake Soap Co. (C. C. A.) 102 F. 327; Rice & Hutchins v. Vera Shoe Co. (C. C. A.) 290 F. 124; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 63, 25 L. Ed. 993; Chapelle v. Applebaum (D. C.) 254 F. 709; New England Awl & Needle Co. v. Marlborough Co., 168 Mass. 154, 46 N. E. 386, 387, 60 Am. St. Rep. 377.

Defendant's contention in the instant case is effectively answered in the opinion by Mr. Justice Holmes in New England Awl & Needle Co. v. Marlborough Co., supra, where it is said: "They knew that they were putting the power to do so into the retail dealers' hands. It hardly can be doubted that they contemplated that the wholesale dealer at whose request they put up their awls in this form, with full knowledge of the plaintiff's prior use, would or might try to deceive the public, and whether they did or not is immaterial."

The same rule is announced in Amoskeag Mfg. Co. v. David Trainer, supra, where it is said: "Neither will the complainant be deprived of remedy in equity, even if it be shown by the respondent that all the persons who bought goods from him bearing the trade-mark of the real owner were well aware that they were not of the complainant's manufacture. If the goods were so supplied by the wrong-doer for the purpose of being resold in the market, the injury to the complainant is sufficient to entitle him to relief in equity."

We are of the view that the defendant must, therefore, be held responsible for these conceded acts of unfair competition, and plaintiff was entitled to injunctional relief, unless precluded by its laches.

It remains to consider whether, as held by the lower court, the plaintiff was estopped from maintaining this suit by reason of its laches. The practice of the grocers in advertising defendant's coffee as "Monarch" did not come to the knowledge of the plaintiff until 1925, at which time it promptly gave notice of protest to the defendant. There was apparently some correspondence in 1901 and 1908 with reference to the use of this name by the defendant. The correspondence, however, does not indicate acquiescence on the part of the plaintiff in the use of its trademark, and the evidence indicates that the defendant abandoned the use of the word as a mark on the goods complained of at that time.

Violation of a trade-mark and unfair competition constitute a continuing wrong, and, while laches may be a ground for denying a right to recover damages, it will not ordinarily constitute a bar to an injunction for future infringement. There is no claim that the defendant, in carrying on its mail order business, has expended any money to build up a good will in the name which it claims is a grade mark. Any delay, therefore, on behalf of the plaintiff in asserting its exclusive right to the use of this name has not caused any injury to the defendant. The deception practiced by the retail grocers was not, it must be remembered, known to plaintiff until about 1925. This unfair competition threatens to be a continuing wrong against plaintiff's well-advertised trade-mark and good will. Under these circumstances, it cannot properly be held that plaintiff was guilty of such laches as to preclude its right to injunctional relief. Layton Pure Food Co. v. Church & Dwight Co. (C. C. A.) 182 F. 24, 33; Layton Pure Food Co. v. Church & Dwight Co. (C. C. A.) 182 F. 35, 32 L. R. A. (N. S.) 274; Moline Plow Co. v. Omaha Iron Store (C. C. A.) 235 F. 519, 525; Valvoline Oil Co. v. Havoline Oil Co. (D. C.) 211 F. 189; Edward & John Burke v. Bishop (C. C.) 175 F. 167; Beattie Mfg. Co. v. Smith et al. (C. C. A.) 275 F. 164; Dr. Peter H. Fahrney & Sons Co. v. Ruminer et al. (C. C. A.) 153 F. 735, 737; N. K. Fairbank Co. v. Luckel, King & Cake Soap Co. (C. C. A.) 116 F. 332; Saxlehner v. Siegel-Cooper Co., 179 U. S. 42, 21 S. Ct. 16, 45 L. Ed. 77; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828.

This court in Layton Pure Food Co. v. Church & Dwight Co., supra, said: "The owner of a trade-mark is not chargeable with laches for failure to prosecute an infringer before he knows or has such notice as would lead an ordinarily prudent person to inquire and learn the existence of the infringement."

In Moline Plow Co. v. Omaha Iron Store Co., supra, this court again said: "The record contains no substantial evidence of an abandonment of its rights by the Moline Company, and constant or continuing trespasses neither deprive the victim of his equitable right to an injunction against their con-

tinuance in the future, nor confer upon the trespasser any right to perpetuate them."

What is said by this court in Layton Pure Food Co. v. Church & Dwight Co., supra, is here apposite. It is there said: "The complainant is the owner of a trade-mark for baking soda and baking powder consisting of this picture of a cow and this is valuable property. It is entitled to be protected in the exclusive use of this property. Every sale under this trade-mark of a package of baking powder manufactured by another is an infringement of the complainant's right and a trespass upon its property. While the delay of the complainant and its apparent acquiescence in past trespasses may make it inequitable to compel the defendant to account for the profit it derived from them, they confer upon it no right either at law or in equity to continue them."

It has been said by the Supreme Court in McLean v. Fleming, that even "inexcusable laches in seeking redress was no defense against that part of the prayer of the bill that sought to restrain an infringement in the future." Dr. Peter H. Fahrney & Sons Co. v. Ruminer, supra.

The lower court was of the view that its holding that the plaintiff should be precluded by reason of its laches found support in Saxlehner v. Siegel-Cooper Co., supra, but in that case the court said: "We think that an injunction should issue against all these defendants, but that, as the Siegel-Cooper Company appears to have acted in good faith, and the sales of the others were small, they should not be required to account for gains and profits. The fact that the Siegel-Cooper Company acted innocently *does not exonerate it from the charge of infringement.*" (Italics ours.)

In the instant case the lower court might very properly have denied the plaintiff's prayer for an accounting or for damages, but we are of the view that the court was in error in denying the plaintiff injunctional relief. The judgment is, therefore, reversed, and the cause remanded for further proceedings consistent herewith.

STONE, Circuit Judge (dissenting).

I feel compelled to dissent upon the ground of the laches of appellant. This was the basis of the determination of the trial court. That determination well expressed the situation in an opinion which seems sound to me and which makes repetition here unnecessary.