848

**AMERICAN CHICLE CO. v. TOPPS CHEW-ING GUM, Inc. et al.**

**Civ. No. 12870.**

United States District Court
E. D. New York.

June 4, 1953.

Nims, Martin, Halliday, Whitman & Williamson, New York City, W. Lee Helms and Stewart L. Whitman, New York City, of counsel, for plaintiff.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City, George E. Middleton, Hubert G. Moore, Jr., New York City, of counsel, for defendants.

GALSTON, District Judge.

This action involves alleged trade-mark infringement and unfair competition.

There is also a counterclaim of the defendants, which seeks to have the trade-mark registration of the plaintiff, covering its trade-mark Clorets, cancelled.

The plaintiff is a manufacturer of chewing gum, and has been in that business for over fifty years. Some time in February, 1951, it marketed a chlorophyll chewing gum under the name Clorets. The volume of its sales was very considerable, and had been aided by extensive advertising. The distribution of the product was nationwide. The advertising had been carried on in such magazines as Life, The Saturday Evening Post, Look, and many others, and likewise in newspapers. Plaintiff alleges that its long continuous and extensive use and advertising of its trade-mark Clorets has identified that trade-mark with the plaintiff and its product. It is likewise asserted by the plaintiff that the package of its chlorophyll gum is recognized and used by purchasers to identify plaintiff's chewing gum and to distinguish it from other brands. It contends also that there has been created in the minds of dealers, as well as in the minds of buyers and consumers of chewing gum, a very close association between the name Clorets and its product.

The defendants manufacture and sell chlorophyll chewing gum under the name Clor-aid, in packages having some resemblance to the Clorets package.

The retail price of the plaintiff's package, Clorets, since that package was put on the market is 15¢, whereas the retail price of defendants' package is but 10¢.

It is contended that the acts of the defendants are calculated to cause consumers to buy defendants' product in the belief that it is the product of the plaintiff, and that many consumers have bought defendants' product in such belief. Thus the

defendants are charged with unfair competition. It is claimed too that the name Clor-aid is commonly referred to by the trade as Clor-aids, and thus infringes plaintiff's trade-mark rights. Specimens of the plaintiff's package, and the challenged package of the defendants, are annexed to the complaint.

■ First as to the common law trade-mark, Clorets: I do not think the plaintiff has sustained its claim of infringement of the common law trade-mark. Apparently this is a commercial period in which the term "chlorophyll" is very much in the public mind, and its supposed beneficial medical value has led to the adoption by many manufacturers of terms suggesting the presence of chlorophyll. The proof leaves no doubt that chlorophyll chewing gum has been and is sold in the United States by those other than the parties in suit under varying names, as for example

| | |
|---|---|
| CHLOR-I-Chew | Clorodets |
| Chlor O Fresh | Clorogum |
| Chlorogum | Cloro Mint |
| Clor-Amo | Clorosin |
| Chloro-Leaf | Clor-O-Gem |
| Chloro-Mints | Cloro-Nips |
| Chlorophyllets | Clorons |

Trade-marks have been registred by parties other than those involved in this action of the following names:

| | |
|---|---|
| Cloryl | Clora-Breth |
| Chlorophyllets | Clor-O-Gems |
| Chlorodel-Mints | |

and registration has been sought of additional names:

| | |
|---|---|
| Cloro-Gum | Cloractiv |
| Clorosin | Clorized |
| Chloro-Hint | |

In view of the foregoing, it is difficult to conclude that the trade-mark Clorets is infringed by the trade-mark Clor-aid. The syllable "clor" (or "chlor") seems very much in the public domain. "Ets", the second syllable of plaintiff's mark, does not foreclose the defendants from the use of their second syllable, "aid", even though in certain French speaking sections of the country, plaintiff's second syllable would be pronounced somewhat as is defendants' second syllable. Nor is the situation changed unfavorably to the defendant by any use of the plural "aids" by purchasers of defendants' gum.

Incidentally we should consider here the use of the name Clorodets. The Crawford Gum Co., Inc., plaintiff's predecessor, in the use of the name Clorets, brought an action in the United States District Court for the District of Columbia against Dorchester Products Co. et al. in which the plaintiff sought to enjoin the defendants from using the mark Clorodets as an infringement of plaintiff's trade-mark Clorets. It appears that the action was dismissed with prejudice, the parties having on July 14, 1951 entered into a settlement agreement wherein the defendant was released from all charge of infringement. In the settlement agreement it is recited that the Dorchester defendants had filed *applications for registration of trade-marks Clorodets and Clorets in the name of Dorchester Products Company*, and this stipulation further provided that Dorchester should abandon the application for registration of Clorets, but not for the registration of Clorodets. The agreement recited:

"The parties hereto agree to cooperate in such manner as required to effect and expedite the use of registration to Dorchester Products Company of the trade-mark Clorodets and the issue of registration to Crawford Gum Co., Inc. of the trade-mark Clorets."

Thus the latter registration was issued as No. 555,672 on March 4, 1952. It is not particularly important to determine whether the settlement of that lawsuit arose out of an alleged earlier use of the term Clorodets by the Dorchester Company. On the evidence in this suit, one cannot speculate as to that. However, what does stand out is, if plaintiff's predecessor was willing to permit Clorodets to be continued to be used by the Dorchester Company, an inference would lie that the Crawford Company did not believe that Clorodets infringed Clorets.

Added to the other more or less general use by other manufacturers of various combinations of derivatives of chlorophyll, it follows that the common law trade-mark Clorets was not infringed by the use of the term Clor-aid. See Parfumerie Roger & Gallet v. M. C. M. Co., 2 Cir., 24 F.2d 698; Dixi-Cola Laboratories v. Coca-Cola Co., 4 Cir., 117 F.2d 352.

█ The issue of unfair competition presents greater difficulty. Both sides sent out shoppers in order to make a survey in respect to confusion. The plaintiff, from the surveys made by its representatives, draws the inference that frequently when Clorets chewing gum was asked for, they were supplied with defendants' packages. Contrariwise, defendants' shoppers encountered no such confusion.

Neither of these surveys seems particularly convincing. At least this, however, must be considered, that in some instances, when the purchaser asked for one he got the other. Whether such confusion stemmed from similarity in packaging, or from the carelessness of the retail clerk, cannot be determined on the evidence.

But that confusion can exist seems likely. The defendants, when they selected their term Clor-aid, and when they determined on the design of their package, unquestionably knew of the prior use of the plaintiff's name and packaging. Now if we compare plaintiff's own 15¢ package with defendants' 10¢ package, there are certain differences and there are certain similarities. But the use of "Now 10¢" on defendants' package could mean only one thing, and that was to rivet the attention of the buyer on the thought that he was now getting something for 10¢ that had previously cost something more, i. e. the 15¢ package of the plaintiff. Though the sizes of the two packages are not the same, the color combinations are; a combination of green and red predominates in both, as do also the windows showing the gum specimens. It is true that the red window of the plaintiff's package is circular, and that some sort of cross is indicated, whereas the defendants' package is an eliptical window with the red of the window being the continuation of the red on which the word "chlorophyll" appears. Both packages contain the phrase "Active Ingredient Chlorophyllin".

On the reverse side they have not much in common. The name of the plaintiff appears prominently on its package. There is no name on the reverse side to indicate the manufacturer of Clor-aid. On the marginal sides, Clor-aid packages say "12", indicating the contents, as do the plaintiff's packages, the price 10¢ indicated on one side of the Clor-aid package, and a direction to open. The defendant follows the plaintiff in the instruction "Open here".

It may be said that the careful buyer would note the dissimilarities, and be guided by them, but the careless buyer would not.

The conclusion is inescapable that with the combination of similarities that have been pointed out, and the use of the selling dodge "Now 10¢", the defendants unfairly sought to invade the plaintiff's field, and thus tended to aid the dealers in passing off defendants' goods as plaintiff's. See Coca-Cola Co. v. Gay-Ola Co., 6 Cir., 200 F. 720, certiorari denied 229 U. S. 613, 33 S.Ct. 773, 57 L.Ed. 1352; Wolf Bros. & Co. v. Hamilton-Brown Shoe Co., 8 Cir., 206 F. 611, affirmed 240 U. S. 251, 36 S.Ct. 269, 60 L.Ed. 629; Federal Trade Commission v. Winsted Hosiery Company, 258 U.S. 483, 42 S.Ct. 384, 66 L.Ed. 729; Reid, Murdoch & Co. v. H. P. Coffee Co., D.C., 48 F.2d 817, certiorari denied 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 529.

There is no contention that the plaintiff's product is any better than the defendants' product, and so far as can be inferred from the proofs in this case there has been no loss of business.

The plaintiff is entitled to a very limited injunction in respect to plaintiff's packaging. Perhaps the elimination of the window, or a substantial change there, with the name of the defendants appearing prominently on the package, and a different color combination, would meet all reasonable requirements. "Now 10¢" must be permanently abandoned. The defendant admits that it no longer uses the "Now" as part of the sales price sign.

In respect to the defendants' counterclaim, in which the defendants seek the cancellation of the plaintiff's registration of its trade-mark, it may be said that that registration is not an issue in the case. The counterclaim will be dismissed without prejudice. Settle decree.

Appropriate findings of fact and conclusions of law will be filed concurrently with this opinion.