EDWARD & JOHN BURKE, Limited, v. BISHOP.

(Circuit Court, S. D. New York.   January 14, 1910.)

1. TRADE-MARKS AND TRADE-NAMES (§ 75*)—UNLAWFUL COMPETITION—LABELS.
    Bottles, labels, and capsules in which Guinness' Extra Stout, bottled by T. B. Hall & Co., Liverpool, and purchased by defendant for resale from William A. Ross & Bro., Importers, *held* so similar to the bottles, labels, and capsules previously devised and used by complainants, E. & J. Burke, Limited, bottlers of the same stout, as to deceive the public, and therefore constituted unlawful competition.
    [Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 75.*]

2. TRADE-MARKS AND TRADE-NAMES (§ 23*)—LABELS—RIGHT TO USE—PROPERTY RIGHT.

Where complainants adopted a red capsule in connection with certain specified labels and collocation to distinguish Guinness' Stout, bottled and exported by them and sold in the United States, their right to the use thereof was a property right which the courts would protect against infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 26; Dec. Dig. § 23.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 86*)—ABANDONMENT—LACHES.

A complainant is not entitled to protection against infringement of its labels, capsule, and collocation, used in the sale of an article of merchandise, if, for a long period, it has knowingly allowed others to use substantially the same capsule, labels, and collocation without objection.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 95; Dec. Dig. § 86.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 32*)—UNLAWFUL COMPETITION—ABANDONMENT—LACHES—INTENT.

In order to establish abandonment of a merchant's right to protection of his labels and collocation under which his goods are sold, an actual intent to abandon must be shown, though it may be inferred from his acts or laches necessarily pointing to actual abandonment.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 36; Dec. Dig. § 32.*]

5. TRADE-MARKS AND TRADE-NAMES (§§ 32, 86*)—PROTECTION—ABANDONMENT—LACHES.

Complainant had instituted eight different suits in the United States to restrain imitation of its dress of bottles in which it sold Guinness' Stout, including the capsule; and in 1893, when R. commenced selling the same stout under similar labels, collocation, and capsules, complaint was made, and negotiations followed. Suit was commenced in 1896, which was considerably delayed owing to the residence of the parties and witnesses; and, complainant's solicitor dying, the suit was discontinued by consent in 1901. A new suit was instituted in March, 1904, and evidence was taken therein in 1906, 1908, and 1909; there being no orders limiting the time, or motions or requests for more expeditious prosecution, and since the suit was begun there had been a partial compliance by R. with complainant's demand. *Held*, that complainant had not abandoned its right to the protection of its labels, capsule, and collocation; nor was it guilty of such laches as to preclude an injunction restraining defendant's use of a capsule, labels, and collocation constituting unlawful competition, though complainant was not entitled to an accounting.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 36, 95; Dec. Dig. §§ 32, 86.*

Abandonment of trade-marks and trade-names, see note to Saxlehner v. Eisner & Mendelson Co., 33 C. C. A. 294.]

6. TRADE-MARKS AND TRADE-NAMES (§ 85*) — UNLAWFUL COMPETITION — EXTRAVAGANCE IN ADVERTISING.

Mere extravagance in advertising is not such a fraud as will deprive a complainant of relief in a suit for unlawful competition.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

In Equity. Suit by Edward & John Burke, Limited, against Isaac C. Bishop, to restrain alleged unfair competition in trade in the sale of Guinness' Stout in bottles bearing capsules and labels in a collocation so like the style and dress of complainant's bottles as to be likely to deceive purchasers. Injunction granted, but accounting denied.

*For other cases see same topic & § NUMBER in Dec. & Am. Dig. 1907 to date, & Rep'r Indexes

Edmund Wetmore and Oscar W. Jeffery, for complainant.

Parker & Aaron, for defendant.

RAY, District Judge. The complainant is, and at the time of the commencement of this suit was, a corporation organized and doing business under the laws of the Kingdom of Great Britain and Ireland, and for many years has had, and now has, a place of business in the city of New York, U. S. A. Its business is that of export bottlers of stout, ales, whiskies, and other goods. It is the successor in business of the firm of Edward & John Burke, composed of Edward Burke, John Burke, and John Gardner Nutting. In 1870 that firm was the sole export bottlers for the United States of the stout brewed by Arthur Guinness, Son & Co., Limited, and they continued to be such sole export bottlers of such stout until 1874 or 1875. For about 50 years the complainant and its predecessor have exported to the United States this Guinness' Stout in bottles bearing labels and capsules in the following style, dress, and collocation (with some insignificant alteration of detail), viz.: The bottle itself is of the shape and size of the ordinary lager beer or beer bottle. On one side is an oval label with the picture of a small harp thereon (trade-mark), such label bearing the words, in large print, "Guinness's Extra Stout, James Gate, Dublin," and, in small type, the words, "Printed and issued by us as our trade-mark and label, Arth Guinness, Son & Co.," a number printed in large red figures, and also, in small type, the words "Bottled by E. & J. Burke, Limited, Dublin, Ireland, who sell no other brown stout in bottles." Below this, and attached horizontally, is another oval label of the same color bearing the words:

"Guinness' Extra Foreign Stout, Dublin. We the undersigned guarantee and hold ourselves responsible that we bottle none other than Guinness's Finest Foreign Stout which we have continuously done for past half century. Edward & John Burke, Limited. Established in Dublin in 1849."

On the opposite side is another oval label bearing the legend in large print:

"E. & J. Burke, Guinness' Foreign Stout, Brewed in Ireland. Caution— None genuine without our patent capsule bearing our trade mark. Edward and John Burke, Limited. Dublin."

The caution is in smaller type. Above the caution is the picture of a cat between the words, "trade" and "mark," and underneath the cat is the monogram, "E. & J. B." All these labels are of a buff or yellowish color, except the central part of the third one has some check marks made by red lines. The capsule, covering the nose of the bottle and extending downward something more than an inch, is red, except the tip or very top of the capsule, which is yellow, and both side and top have the said trade-mark (cat) and monogram, and letters "E. & J. Burke, Dublin," thereon. That which first catches the eye or attracts attention is the red capsule. The next prominent feature is the first and second label mentioned and their color and arrangement with reference to each other; the first being perpendicular to the other. If one stops to read, the third label tells who bottled the stout. All the labels tell that the contents are Guinness' Stout.

The defendant, Isaac C. Bishop, is a citizen of the United States, residing in the Southern district of the state of New York and doing business in the city of New York. He is a dealer in stout, ale, and other beverages, but not a bottler or an importer. Prior to the commencement of this suit, April 1, 1904, he sold in his said business bottled stout, contained in bottles of the same size and shape as those of complainant. This stout was manufactured by Arthur Guinness, Son & Co. of Dublin, Ireland, at that place, and was bottled by T. B. Hall & Co. of Liverpool, England, and imported to the United States by William A. Ross doing business in the city of New York under the name and style of William A. Ross & Bro. by whom it was sold to the defendant. This stout was put up and sold in bottles of the same size and shape as Burke's, dressed and labeled as follows, viz.: The first label in all respects, including size, shape, and color, is the same as the first-mentioned label on the complainant's bottles, substituting the words, "T. B. Hall & Co., 79 to 83 Norfolk street, Liverpool," for the words, "E. & J. Burke, Limited, Dublin." The second label, of the same size, shape, and color of complainant's and attached at the same place and in the same way, reads:

"Auk's Head Bottling. Guinness's Extra Foreign Export Stout, Brewed by Arthur Guinness, Son & Co., Ltd., James's Gate, Dublin, and guaranteed genuine by W. A. Ross & Brother, Belfast & Liverpool, who sell no other stout."

On the opposite side of the bottle is a third label of the same shape, size, and general color of complainant's third label omitting check marks, bearing the words, "Ross's Brand," with an auk's head between the word "Ross's" and the word "Brand." Beneath the auk's head is printed:

"Great Auk's Head, Regd. Trade Mark. W. A. Ross & Brother, Belfast, Liverpool & London. Guinness's Extra Foreign Stout, brewed by Arthur Guinness, Son & Co., Ltd. James's Gate, Dublin, Ireland. Guinness's Stout."

In small type running around the border are the words:

"This label is registered and entered at Stationers Hall, London. Used only by W. A. Ross & Brother, Belfast, Liverpool & London."

Above this label is a fourth, of white paper, bearing the words, printed in red, "Great Auk's Head." The capsule, covering the nose of the bottle and extending down on the neck thereof as far as does complainant's capsule, is of the same red color as complainant's capsule, but has a small strip of blue added. On the side of this capsule is found the words, "Guaranteed genuine, W. A. Ross & Brother," and on the white top or tip is found the picture of the auk's head and the words, "W. A. Ross & Brother, Ltd., Belfast & Liverpool."

At a little distance the one bottle thus labeled and dressed resembles the other as so dressed and labeled so closely, when the sides bearing the two labels first described are presented to the eye and the bottles stand side by side, that the one would easily and probably be mistaken for the other. On close inspection and reading we discover the difference. Presenting the other sides of the two bottles standing side by side (those sides bearing the trade-marks, cat, and auk's head respectively and the name "E. & J. Burke" in large letters on the one and

"Ross's Brand" in large letters on the other), and the resemblance is much less marked. When thus presented to a purchaser or consumer, he would not be liable to mistake the one for the other provided he wanted stout of Burke's bottling and looked to see if he had it, although he might not understand that "Ross's Brand" and "Auk's Head" are not of Burke's bottling. Simply taking in at a general glance the two bottles, or not having but one before him and guided, as naturally he would be, by the general size and shape of the bottle and the most distinctive feature, the color (red) of the capsule, the ordinary purchaser or customer, calling for a bottle of Guinness' Stout of Burke's bottling, would readily accept the one for the other, the "Ross's Brand" for the Burke. The first label described, the brewers require all bottlers to affix to their bottles; name of the bottler printed thereon being made to correspond with the fact. The second and third labels are of the bottler's own choice or design. The position the second label shall occupy is fixed by the bottler. The bottler also selects his own capsule and its color. The close resemblance of a bottle of Guinness' Stout bottled by Hall & Co. and imported and sold by W. A. Ross & Bro. to a bottle of the same stout bottled by Burke and imported and sold by them is too close, too similar, to be the result of accident or of anything but study and a purpose to imitate the labels and dress of E. & J. Burke. The color, size, and shape of the second label and its position on the bottle and the color and length of the capsule indicate this very plainly. Then, again, there is too much similarity in the placing of the large letters on the third label. "Guinness's Stout" on Ross' bottle is in the same place we find "Guinness's Foreign Stout" on Burke's bottle.

Why say "Ross's Brand," instead of "W. A. Ross & Brother," in large capitals on the third label? This is designed and calculated, whether designed or not, to deceive and mislead; to give the impression to one accustomed for some twenty years to have access to stout of Burke's bottling only that Ross' brand of Guinness' Stout is one brand of Burke's bottling. The word "brand" may be used to indicate the manufacturer or the quality of the contents, or with something else as a means of identification, or to indicate the trade-mark, or quality or kind as indicated by the brand or mark. See Century Dictionary, "Brand." On Burke's bottle, at top of the third label, the words "E. & J. Burke, Trade Mark," and monogram surrounding the picture of the cat, indicate very clearly the trade-mark. On defendant's bottle in this third label with the auk's head occupying the same place, substantially, as the cat on Burke's label, and surrounded by "Ross's Brand, Great Auk's Head, Regd. Trade Mark," the word "Brand" in large capital letters conveys a double meaning, and in connection with its position and the rest of the collocation aids to deceive; at least it tends to confusion. I assume that both had the right to use bottles of the same size and shape, and that both had the right to use, and were required to use, the first label mentioned. It was entirely unnecessary for Ross to use a second label of the same size, shape, and color as Burke's and attach it at the same place on the bottle and in the same relation to the first label as did Burke. It was entirely unnecessary to imitate the shape and general color of the third label and

the general arrangement and size of words and trade-mark printed thereon. It was not at all necessary to closely imitate Burke's capsule. In my opinion Ross did far too much by way of imitation and much too little by way of differentiation. When adding the fourth label, it would have been inexpensive and simple to have added in large red print, to correspond with "Great Auk's Head," the words, "Bottled by W. A. Ross & Brother." It would have been very easy and inexpensive to have changed the size, shape, and color of the second label. Indeed, since complaint was made, and this suit commenced, Ross has changed the second label to a rectangle of white paper, leaving off the auk's head, and printing thereon the following only, "Great Auk's Head, the best the brewers brew," in red, and "Bottling of Guinness's Extra Foreign Stout guaranteed genuine by W. A. Ross & Brother who sell no other stout, Belfast, Liverpool & London," in white on a blue ground.

### Laches and Abandonment.

The defendant contends that the complainant is not entitled to relief because of laches, and that there has been an implied consent to or acquiescence in what defendant has done or is now doing. He contends that C. Machen & Hudson of Liverpool have used the red capsule, as have Wheeler & Co. of Belfast, and C. G. Hibbert & Co. of London. Exhibits are in evidence showing this. The general dress and style of the Hibbert exhibit and Machen & Hudson exhibit are very different from that of complainant's. Complainant's exhibit, "Hall Pelican Bottle," defendant's Exhibit 24, and defendant's Exhibit 25, bottled by Machen & Co., in general dress and style, including the red capsule (but having a blue tip), closely resemble the dress and style of complainant's bottle. All the bottles are substantially of the same shape and size. C. Machen & Hudson has no connection with Machen & Co. Hall & Co. Pelican Brand, purchased from Machen & Co., was discontinued after complaint and investigation as to Burke's right to the red capsule, which investigation was made by Hall & Co. Hall & Co. also state in a letter that Machen & Co. had not shipped the Pelican brand to the eastern ports of the United States, and it is stated, and I find no evidence to the contrary, that the "Pelican Brand," referred to, was never found on the market in the United States. Mr. Ross also said he had never seen any of either the Machen & Hudson or Wheeler bottled stout in the United States. T. B. Hall & Co. also used the red capsule on a bottle containing Guinness' Stout (Defts. Ex. 20) having a blue tip. It used a certificate label of the same color as the first label (Arthur Guinness & Son's proprietary label) oval, and affixed in connection with it. The third label on the opposite side of the bottle is quite distinctive, and has a boar's head in red, on a white ground, over the words "Trade Mark," and is surrounded by the words in white on a black ground "T. B. Hall & Co., Export Bottlers, Liverpool."

The defendant has introduced some evidence which he claims tends to show that Guinness, Son & Co. saw the Ross labels, etc., in advance of their use and approved them. I do not see that this has any significance even if proved. I find no evidence that Arthur Guinness, Son

& Co. has ever assumed to dictate to or control the use of capsules, labels, and general dress of bottles, by those who bottle its stout for export, or who bottle and export it as between themselves. I assume that it may dictate the labels and dress of such bottles or decline to sell their stout to those who refuse to conform. That company does require the use of the first label described, which, as I understand, is the proprietary label of the company. I find no evidence that it has ever interfered between E. & J. Burke and W. A. Ross & Bro., or that it has ever done anything to prevent the adoption by E. & J. Burke of the capsule, labels, and dress described, or to grant permission to W. A. Ross & Bro., or any one else, to use it or them. It is clear that E. & J. Burke, the complainant and their predecessors in business and title, were the first bottlers of Guinness' Stout to adopt and use the red capsule and the labels and collocation formerly and now used by them. This red capsule, in connection with the labels and collocation, came to distinguish Guinness' Stout bottled and then exported and sold in the United States by complainant. The complainant became the owner of the right to use same. It became a property right, one the courts may and ought to protect. The business became and was valuable to them, and they had the right to the patronage and trade of that part of the general public in the United States who desired and called for, or who should desire and call for, Guinness' Stout of Burke's bottling.

Neither the defendant, nor W. A. Ross & Bro., nor any one else had or has the right to deceive or mislead the public or any part of it into purchasing and using or purchased or using Guinness' Stout bottled by them, even if just as good, under the belief or misapprehension that it was bottled by the Burkes. This would be unfair competition in business or trade. If the defendant, or W. A. Ross & Bro., defendant consummating their acts by selling, have done this by simulating the capsule, labels, and collocation long in use and first in use by the Burkes and adopted and used to designate Burke's bottling of this stout from that of all others, and such simulation has led to confusion, or is calculated to lead to confusion and deceive the public, such acts ought to be restrained. If, however, the complainant corporation has for a long period of time knowingly allowed others to use substantially the same capsule and labels and collocation without objection, and, if continued, without taking legal steps to assert and enforce its rights, it has abandoned its rights. The intent to abandon is inferred from the acts and laches described. It is, of course, true that "to establish the defense of abandonment it is necessary to show not only acts indicating a practical abandonment, but an actual intent to abandon." Saxlehrer v. Eisner & Mendelson Co., 179 U. S. 19, 31, 21 Sup. Ct. 7, 11, 45 L. Ed. 60.

But intent to abandon is necessarily inferred from acts which necessarily point to actual abandonment. It is not necessary to show declarations of an intent to abandon. For such acts of abandonment we are not to go back of 1874, as before that the bottling of Burke of this stout was the only one sold in the United States. I have already referred to the use of the red capsule, etc., by others. The McMullen exhibit has no red capsule. Ross, as a witness, speaks of showing to Guinness, Son & Co, a red, white, and blue capsule. The one used by Ross & Co. and sold by the

defendant is, I presume, the one referred to. The white tip and the very narrow strip of blue at the lower end thereof do not differentiate it at a little distance from the red capsule with yellow tip of the complainant. Wheeler & Co. used the red capsule something like 20 or 25 years ago, was requested to discontinue its use, and did so. It seems that that company thereafter resumed its use; but of this complainant had no knowledge until after this suit was instituted. There is no sufficient or substantial evidence of the use of the red capsule in the United States or of the red capsule in connection with a simulation of Burke's labels, etc., to sustain the defense of abandonment. I have referred to but a small part of the evidence. It is unnecessary. It must be conceded that complainant has been somewhat lax in asserting and enforcing its rights, especially as against W. A. Ross & Bro. There are in evidence some eight orders and decrees in as many different suits in the United States brought to restrain imitation of complainant's style of dress of its bottles, including capsule. This is doing fairly well in the way of litigation generally. However, the defendant complains of laches in prosecution as against him and W. A. Ross & Bro., and contends that he had the right to assume there was acquiescence in his acts.

In 1893 Ross commenced the acts now complained of. Complaint was made, and negotiations followed, and a suit was commenced in 1896. Considerable delay was had in the prosecution of that suit, much or some of it due to the residence of the parties and witnesses. The complainant's solicitor and counsel died, and, some time thereafter, in 1901, the suit was discontinued by consent. The defendant insists Ross had the right to assume that complaint of his acts as then being committed was discontinued also. But this does not appear in any papers or oral agreement. In that suit both the complainant and the defendant were citizens of the Kingdom of Great Britain and Ireland, and there was no jurisdiction. That question was not raised, however, by the parties. This suit was brought in March, 1904, about three years thereafter. The case shows that evidence was taken in 1906, 1908, and 1909. I do not find any orders limiting time or motions or requests for a more expeditious prosecution. I find nothing to indicate an acquiescence in the acts complained of and some of which have been continued. On the other hand, I can see reasons why the suit has not been pressed vigorously by either party. Since this suit was brought, there has been a partial compliance with the demand of the complainant. Mr. Ross testifies that since March, 1905, he and his company have not used the oval certificate label, heretofore described (second label mentioned), but have used in place thereof, at the bottom of the side of the bottle and underneath the Guinness' proprietary label bearing their trade-mark, the harp, the following label, viz.: A white rectangle (oblong) bearing the words in large, red capitals, "Great Auk's Head," and underneath those words, on a blue ground, in white letters, the following, "Bottling of Guinness's Extra Foreign Export Stout, guaranteed genuine by," and underneath that on the white ground, in small black letters, "W. A. Ross & Brother, who sell no other stout, Belfast, Liverpool, and London," and underneath that, in red scrip type, the words "the best the brewers brew."

On the opposite side is the "Ross's Brand" label quoted and also the white rectangular label with red, capital letters "Great Auk's Head." This bottle has the red capsule with narrow blue band and white tip before described. The main trouble with this dress is that it does not tell, except by careful reading, that the contents is not of E. & J. Burke's bottling. The red capsule, to those who regard that as characteristic of Burke and as belonging to E. & J. Burke, still says the stout is of Burke's bottling. If W. A. Ross & Bro. really intend to use a red, white, and blue capsule, and thus differentiate its capsule (or bottle of stout) from that of E. & J. Burke, Limited, it would be easy to let the white show on the side of the bottle and make the blue much more conspicuous by making the blue band wider. This would not in the least detract from the appearance of the bottle. I find no evidence of fraud on the part of the complainant. W. A. Ross & Bro. so bottles and advertises that one is left in doubt as to the bottler of the stout exported by them unless we carefully read the fine print of the proprietary label, and on defendant's Exhibits 8 and 12 I find:

"Ask always for Great Auk's Head Guinness's Stout, and see that labels, corks and capsules bear the great auk's head, trade mark and the signature thus, W. A. Ross & Brother, without which none is genuine."

Was this intended to be a statement by Ross & Bro. that bottled stout not bearing the great auk's head is not genuine Guinness' Stout? Thousands would get that impression. Mere extravagance in advertising is not such fraud as deprives a complainant of all remedy. See Dr. Peter H. Fahrney & Sons Co. v. Ruminer. 153 Fed. 735, 737, 82 C. C. A. 621; Clark Thread Co. v. Armitage (C. C.) 67 Fed. 896; City of Carlsbad v. Kutnow, 71 Fed. 167, 18 C. C. A. 24; Beecham v. Jacobs, 159 Fed. 129, 86 C. C. A. 623; Nims, Unfair Competition, § 273.

I am of the opinion that the complainant is entitled to an injunction but not to an accounting. Menendez v. Holt, 128 U. S. 514, 525, 9 Sup. Ct. 143, 32 L. Ed. 526; Hesseltine, Unfair Trade, 284, 285.

To deny the injunction would sanction what W. A. Ross & Bro. have done, and may do again, and what they probably would do. The discontinuance of the former suit, the delay in bringing this suit, and its slow prosecution, combined, would seem to disentitle the complainant to an accounting. I am not called upon to decide that the defendant cannot sell bottled stout, of the Ross bottling, the bottles bearing the proprietary label of Guinness, Son & Co., Ltd., and the red capsule with white tip and blue lower border and in no other way imitating or simulating complainant's dress and style, or to decide that W. A. Ross & Bro. cannot use the red capsule in use by them alone, or that the change made in labels and dress since the commencement of this action is sufficient. This court takes the case as it finds it and the complaint made and the offense committed and complained of when the suit was brought. The injunction will run against those acts. I think that the complainant should recover one-half of its taxable costs.

Decree accordingly.