### BIRDSELL MFG. CO. v. ANDERSON.
#### No. 2002.

District Court, W. D. Kentucky.
Sept. 2, 1937.

Shively & Arnold, of South Bend, Ind., and Eugene R. Attkisson and William R. Attkisson, both of Louisville, Ky., for plaintiff.

Nichols, Morrill, Wood, Marx & Ginter, of Cincinnati, Ohio, for defendant.

HAMILTON, District Judge.

This is an action by the Birdsell Manufacturing Company against A. M. Anderson, receiver of the National Bank of Kentucky, seeking to . recover of him $41,481.74, and is submitted on demurrer to the petition.

On April 24, 1930, the plaintiff, then engaged in the manufacture of farm wagons at South Bend, Ind., under the trade names of "Old Hickory," "Tennessee," and "Studebaker," entered into an agreement with the Kentucky Wagon Manufacturing Company to engage it to manufacture farm wagons under the above trade-names, the plaintiff to discontinue this branch of its business. By the terms of the contract, the plaintiff was to furnish to the wagon company, at an inventoried price, its supply of raw materials and parts to be used by it in the manufacture of wagons, for which it was to pay the plaintiff the inventoried price for all material used and. that remaining unused June 30, 1932.

The plaintiff had delivered to the wagon company $61,565.25 in supplies and materials up to January 12, 1931, when it was adjudged a bankrupt and its trustee repudiated the contract. At this time a balance of $46,330.90 remained in the inventory, which was later sold by the plaintiff, net to it $4,849.16. The plaintiff seeks to hold the defendant as receiver for the National Bank of Kentucky, which is in statutory liquidation, for the difference on the ground that the Kentucky Wagon Manufacturing Company was, at the time plaintiff contracted with it, owned and controlled by the National Bank of Kentucky, and that the business of the wagon company was conducted solely as an agency of the bank, and that the contract between the plaintiff and the wagon company was in fact for the use and benefit of the bank.

The defendant demurs to the petition on the ground that the operation of the wagon company by the bank was ultra vires, and it is not bound on the contract between the wagon company and the plaintiff, although the agency and operation of said company by the bank is admitted for the purpose of demurrer.

The power of the bank to operate the wagon company, if it exists, must be found in U.S.C.A., title 12, chapter 2, § 24, subd. 7 (Rev.St. § 5136, 42 Stat. 767, § 1, 44 Stat. 1226, § 2, 48 Stat. 184, § 16, 49 Stat. 709, § 308), which authorizes the board of directors and officers and agents of a national bank to exercise such incidental powers as may be necessary to carry on the business of banking.

A national bank differs from an ordinary business corporation in its relationship to the public. The latter concerns its creditors and stockholders only. Banks receive the money and property of others and the principle of ultra vires is applied with greater firmness to them than

to other corporations. The limitation of the power of national banks to that expressly granted by the statute has been definitely and firmly fixed by decisions of the courts in passing on the legality of the business transactions of such institutions. In Logan County National Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L.Ed. 107, it was held: "The national banking act is an enabling act for associations organized under it, and one cannot rightly exercise any powers except those expressly granted, or such incidental powers as are necessary to carry on the business for which it was established."

In the case of California Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 833, 42 L.Ed. 198, the Supreme Court said:

"It is settled that the United States statutes relative to national banks constitute the measure of the authority of such corporations, and that they cannot rightfully exercise any powers except those expressly granted, or which are incidental to carrying on the business for which they are established. Logan County Bank v. Townsend, 139 U.S. 67, 73, 11 S.Ct. 496, [35 L.Ed. 107]. No express power to acquire the stock of another corporation is conferred upon a national bank, but it has been held that, as incidental to the power to loan money on personal security, a bank may, in the usual course of doing such business, accept stock of another corporation as collateral, and, by the enforcement of its rights as pledgee, it may become the owner of the collateral, and be subject to liability as other stockholders. Germania National Bank v. Case, 99 U.S. 628, [25 L.Ed. 448]. So, also, a national bank may be conceded to possess the incidental power of accepting in good faith stock of another corporation as security for a previous indebtedness. It is clear, however, that a national bank does not possess the power to deal in stocks. The prohibition is implied from the failure to grant the power. First National Bank v. National Exchange Bank, 92 U.S. 122, 128, [23 L.Ed. 679].

"On behalf of the plaintiff below it was admitted at the trial that the stock of the savings bank was not 'taken as security, or anything of the kind'; and it is not disputed in the argument at bar that the transaction by which this stock was placed in the name of the bank was one not in the course of the business of banking, for which the bank was organized."

In First National Bank v. Converse, 200 U.S. 425, 26 S.Ct. 306, 50 L.Ed. 537, it was held: "A national bank has no power to engage in or promote a purely speculative business or to take stock in a corporation organized for that purpose, nor can the power to take such stock as a means of protecting itself from loss on preëxisting indebtedness be inferred from the right to accept it as security for a present loan."

In Cooper v. Hill (C.C.A.) 94 F. 582, it was held:

"A national bank which has lawfully acquired the title to property in payment of a debt has implied authority to make reasonable repairs thereon for the purpose of putting it in salable condition, and its directors cannot be held personally liable for money so expended in good faith.

"A national bank, however, has no power to prosecute a mining business on property which it has acquired,—much less, to expend its funds in prospecting for mineral on such property; and directors who authorize such expenditure are personally liable therefor to the bank or its receiver."

In Cockrill v. Abeles (C.C.A.) 86 F. 505, it was held in the syllabus: "Where a national bank acquired certain mill property in satisfaction of a debt, and the directors organized a corporation among themselves for the purpose of operating the mills as the bank's agent, using its funds, and operated them for the bank at a loss of $23,000, the directors of the bank participating are liable to the creditors for the loss."

In the opinion, at page 512 of 86 F., it is stated that: "The most liberal view which may be fairly taken of the implied powers of national banks would not sustain their right to engage directly in a manufacturing or business enterprise under any circumstances; but, even if the power in question should be conceded to exist under certain conditions, the present case was not one which warranted its exercise. The directors of the bank had no right to employ its funds in an attempt to operate the cotton mills for the bank's account, in the manner alleged in the bill, and such action on their part was unauthorized and wrongful."

In First National Bank v. American National Bank, 173 Mo. 153, 72 S.W. 1059, 1060, it was held: "When a national bank

574

enters into a contract which is beyond its powers, it cannot be estopped from pleading ultra vires by the performance of the contract by the other party."

In Merchants' National Bank v. Wehrmann, 202 U.S. 295, 26 S.Ct. 613, 50 L.Ed. 1036, it was held:

"While a national bank may take by way of security property in which it is not authorized to invest, and may become the owner thereof by foreclosure in satisfaction of the debt; but, without deciding whether it could take shares in a partnership formed for purely speculative purposes as security, it cannot, even in satisfaction of a debt so secured, become the absolute owner of such shares. It would be ultra vires and as it cannot take the shares it is not, and cannot be held, liable for any of the debts of the firm.

"A national bank which has taken such shares in satisfaction of a debt is not estopped either from denying that it was a partner or that it is liable for the debts of the firm."

In First National Bank v. Converse, 200 U.S. 425, 26 S.Ct. 306, 50 L.Ed. 537, it was held: "Notwithstanding its subscription, a national bank, taking stock in a corporation organized for purely speculative purposes, may plead its want of authority so to do as a defense to the claim of a receiver of such corporation for the double liability imposed by a state statute on the stockholders thereof."

In California National Bank v. Kennedy, 167 U.S. 362, 17 S.Ct. 831, 42 L.Ed. 198, it was held: "The want of such authority may be set up by a bank to defeat an attempt to enforce against it the liability of a stockholder."

In First National Bank v. Hawkins, 174 U.S. 364, 19 S.Ct. 739, 43 L.Ed. 1007, it was held: "In the case of such an actual purchase by a national bank, it is not estopped to deny its liability, as an apparent stockholder, for an assessment on such stock ordered by the Comptroller of the Currency."

The plaintiff relies on the principle that a National Bank cannot repudiate its ultra vires contract until it disgorges its benefits. There is no doubt this is a salutary principle of the law and should be vigorously applied. However, the facts do not bring the case at bar within the principle so strongly urged by the plaintiff. The facts show it delivered to the wagon company articles with an inventoried value of $61,565.25. There was used out of the inventory by the wagon company $15,234.35, which sum was paid to the plaintiff. When the wagon company went into bankruptcy and the National Bank of Kentucky into liquidation, there remained in the inventory $46,330.90. The plaintiff refused to repossess the property as it could have done, but notified the trustee of the wagon company and the receiver of the bank that it proposed to sell the inventory to the highest bidder and make claim for the deficiency, if any, which it did, and in this action seeks to recover the difference between the inventory value and the selling price. The bank received no direct benefit from the contract between the plaintiff and the wagon company.

In the case of Citizens' Central National Bank v. Appleton, Receiver of the Cooper Exchange Bank, 216 U.S. 196, 30 S.Ct. 364, 54 L.Ed. 443, cited by the plaintiff, Samuels was indebted in the sum of $10,000 to the Central National Bank, subsequently acquired by the Citizens National Bank, and borrowed from the Cooper Exchange Bank $12,000, the repayment of which was guaranteed by the Central National Bank, and out of the loan Samuels repaid the $10,000.

The receiver of the Cooper Exchange Bank sued the Citizens National on its guaranty and it pleaded ultra vires, which the court refused to sustain solely on the ground the bank retained the $10,000 and could not avail itself of the lack of legal power to enter into the suretyship so long as it received its benefits.

In the case of National Bank of Commerce v. Equitable Trust Company (C.C.A.) 227 F. 526, 533, also relied on by the plaintiff, the bank received dividends on stock which it acquired in an ultra vires transaction. When sued for the dividends, it sought to avoid recovery on the ground they had been acquired under a contract the bank was not authorized to make. The court said: "This position cannot be maintained, where the proceeding is to recover moneys which have gotten into the hands of the bank but belonged to the plaintiff."

In the case of Earling v. Emigh, 218 U.S. 27, 30 S.Ct. 672, 676, 54 L.Ed. 915, the Jenne Creamery Company was in financial difficulties, having outstanding, unpaid checks drawn on the Berlin National Bank in favor of milk producers of about $8,000, with no funds available with

which to meet them, also an unsecured debt of $2,200 owed by a member of the firm to the bank.

To prevent the loss which would be occasioned by bankruptcy, and with the expectation of rehabilitating the business, the bank caused the entire stock of the company to be assigned to Brown, its cashier, who held it for its account. The property of the partnership and the individual members thereof was also transferred to Brown, and the bank paid the outstanding unpaid checks due milk producers by the Company. The business was then carried on by the bank in the name of the Jenne Creamery Company.

The milk producers were not parties to the transfer to the bank, and no notification was given them that the bank was virtually carrying on the business. No new contracts were made with them, and the affairs were carried on as previously agreed.

The operation by the bank was not profitable, and when it failed it had not recouped itself for the $8,000 checks outstanding when the business was taken over, and there were large amounts due the milk producers. The drafts received by the company were mingled with the other moneys in the bank.

The lower court held that the milk producers should be paid the sums due them in the hands of the receiver, and that outstanding checks given for the proceeds of butter sold prior to the bank failure went into the general fund for distribution with other creditors. The Supreme Court, in affirming the lower court, said: "Reviewing and commenting upon the rulings in Logan County National Bank v. Townsend, 139 U.S. 67, 11 S.Ct. 496, 35 L.Ed. 107; Aldrich v. Chemical National Bank, 176 U.S. 618, 20 S.Ct. 498, 44 L.Ed. 611; Central Transportation Co. v. Pullman's Car Co., 139 U.S. 24, 11 S.Ct. 478, 35 L.Ed. 55, and Pullman's Palace Car Co. v. Central Transportation Co., 171 U.S. 138, 18 S.Ct. 808, 43 L.Ed. 108, it was held although restitution of property obtained under a contract which was illegal, because ultra vires, cannot be adjudged by force of the illegal contract, yet, as the obligation to do justice rests upon all persons, natural and artificial, if one obtains the money or property of others without authority, the law, independently of express contract, will compel restitution or compensation. That this ruling is here applicable is plainly manifested by the fact which we have previously pointed out, that the relief afforded by the court below simply gave to the producers so much of their property as was actually in the hands of the receiver, and awarded them a right to recover as general creditors of the bank to the extent only that their property had been received and appropriated by the bank."

The difference in legal principle between the cases cited by the plaintiff and the one at bar is not difficult of discernment. The National Bank of Kentucky did not have in its possession at the time it went into liquidation any property or the proceeds of any property the wagon company had acquired from the plaintiff.

If a national bank has obtained the property of another in an ultra vires transaction, the prior owner may maintain an action against the bank for recovery of the property without the support of the ultra vires contract. This right flows from an implied contract to return or make compensation for property or money which a corporation has obtained illegally. The utmost limit of recovery is the amount the corporation has actually received and used. If the National Bank of Kentucky had received the proceeds of the inventoried property delivered by the plaintiff to the Kentucky Wagon Manufacturing Company, the cases cited by plaintiff's counsel would be applicable, but, as I have heretofore pointed out, the bank received neither the proceeds nor the property for which the plaintiff seeks recovery.

The plaintiff was chargeable with notice of the statutory restriction on the right of the National Bank of Kentucky to do business, and cannot invoke an estoppel to impose on it a liability which the statute forbids. Awotin v. Atlas Exchange National Bank, 295 U.S. 209, 55 S.Ct. 674, 79 L.Ed. 1393.

The demurrer to plaintiff's petition will be sustained.