**FRUIT INDUSTRIES, Limited, v. BISCEGLIA BROS. CORPORATION.**

**No. 6611.**

Circuit Court of Appeals, Third Circuit.

Feb. 8, 1939.

Mabel Walker Willebrandt, of Washington, D. C. (Wm. Montgomery Smith and Garfield O. Anderson, both of Washington, D. C., of counsel), for appellant.

Joseph W. Henderson and Lester Lichtenstein, both of Philadelphia, Pa., for appellee.

Before DAVIS and THOMPSON, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge.

This is an equity suit brought in the United States District Court for the Eastern District of Pennsylvania, by appellee, a Pennsylvania corporation, against the appellant, a California corporation, to restrain the appellant from interfering with the sale by the appellee in Pennsylvania of wine under the trade-mark "Greystone" on the ground that such interference constitutes unfair competition.

The District Court found that the interference amounted to unfair competition, and granted an injunction against the appellant, Fruit Industries, Ltd., restraining it from any further interference with appellee's sale of "Greystone" wine in Pennsylvania.

The injunction was based upon a finding that appellee had in good faith built up a substantial business under this trade-mark in Pennsylvania, a territory which had been unoccupied for a long time by appellant, and that appellant had delayed an unreasonable time in asserting its rights, and was consequently barred from interfering with the appellee's use of the name in that state. Appellant has appealed, alleging in substance that this finding is erroneous.

The essential facts are as follows: the trade-mark "Greystone" was used by the California Wine Association as early as 1895, and was registered by it in the Patent Office in 1911. Prior to Prohibition the Association bottled and sold a light hock wine under the name "Greystone", and also used the name in connection with certain wine sold in bulk. The Association sold some "Greystone" wine in Pennsylvania prior to Prohibition.

The appellant, Fruit Industries, Ltd., is a non-profit co-operative, agricultural association, organized in 1929, by merging several wine-making concerns, one of which was the California Wine Association. In this merger, the association turned over to appellant all its property, including its trade-mark, brands, and labels. Appellant renewed the association's registration of the name "Greystone" in the U. S. Patent Office on May 9, 1931.

In 1925, California Wine Association sold an old winery, known as Greystone Winery, to Bisceglia Brothers, a partnership of San Jose, California. The purchaser used this winery for storage purposes until 1933, and since that time has used it in the manufacture of wine.

On September 19, 1933, the California firm of Bisceglia Brothers also registered the name "Greystone" in the U. S. Patent Office.

On the repeal of Prohibition, Edward Black, of Philadelphia, purchased wine in bulk from Bisceglia Brothers of California, bottled and resold it to the Pennsylvania Liquor Control Board, the only agency through which wine could be legally distributed in Pennsylvania. Black traded under the name of Bisceglia Brothers, and was registered thus under the Pennsylvania Fictitious Name Act. Subsequently Black died, and his estate continued to sell "Greystone" wine to the Board until May 3, 1934, when the business was transferred to the appellee corporation.

There was no evidence to show any relationship of agency between Bisceglia Brothers of California and Bisceglia Brothers Corporation of Pennsylvania, the appellee corporation, or its predecessors. So far as the record discloses, they have always been entirely distinct and separate organizations.

On July 6, 1934, Fruit Industries, Ltd., instituted proceedings against Bisceglia Brothers of California to cancel the latter's registration of the trade-mark "Greystone" in the U. S. Patent Office. On December 17, 1934, the California Partnership permitted a decree pro confesso to be entered cancelling this registration.

Throughout all 1934, and most of 1935, all the California Wine Association brands, including "Greystone" were involved in litigation between the appellant, Fruit Industries Ltd., and the California Wine Association. The right to use these marks, as against the Association, was secured by appellant in a consent decree.

The appellant also brought an equity suit in California against Bisceglia Brothers of California, which resulted in an agreement whereby appellant was granted all the partnership's rights to the use of the trade-mark. Prior to this agreement, however, Bisceglia Brothers of California had a controversy with the appellee with reference to the latter's use of the trademark in Pennsylvania. This resulted in an abandonment by the California firm to the appellee of all its rights to the trademark in this state.

Appellee's sales of various types of "Greystone" wine to the Pennsylvania Liquor Control Board amounted to $338,-620.45 in 1934, to $378,406 in 1935, and to $630,229.32 in 1936. During these three years appellee expended $117,669.28 in advertising and promoting the sale of various types of "Greystone" wines. Ninety percent of appellee's business is based on sales to the Pennsylvania Liquor Control Board, and it is estimated that about thirty percent of all wine sold through the Pennsylvania liquor stores is appellee's "Greystone" brand. The trade-mark has been in uninterrupted use by the appellee in Pennsylvania since the repeal of Prohibition, and was registered by appellee under the state law on February 6, 1936. The appellant stipulated, as part of the record in the court below, that it knew early in 1934, that the Pennsylvania State Liquor Stores were selling various types of wine under the name "Greystone" which were not the product of the appellant.

On January 25, 1937, the appellant notified the Liquor Control Board that it was the owner of the trade-mark "Greystone" and that the appellee was unlawfully using the same. To avoid any liability from selling and distributing appellee's product, the Board discontinued further purchases from appellee until March, 1937, when appellee arranged to give a bond to indemnify the Board from any liability, whereupon the Board resumed purchasing from the appellee.

The question presented is whether under these circumstances the appellant has the exclusive right to use the trade-mark "Greystone" in Pennsylvania.

From the record, the following conclusions are justified: Prior to Prohibition the California Wine Association had a valid right to the exclusive use of the trade-mark "Greystone" in Pennsylvania. During Prohibition, this right was transferred to appellant. However, the trade-mark did not enjoy any extensive reputation in Pennsylvania, and at the time of Repeal, its goodwill was negligible. When Prohibition was repealed, appellee innocently adopted and used this trade-mark in Pennsylvania. Early in 1934, the appellant learned that this trade-mark was being used in Pennsylvania, but took no action to interfere with this use until January, 1937. During this period the appellant did not offer its "Greystone" wine to the Pennsylvania Liquor Control Board,

and appellee built up a large and profitable business and spent large sums of money in advertising and promoting the sale of wine under this name.

Under these facts and circumstances, the decree of the lower court is fair and equitable.

The senior user of a trade-mark is barred from interfering with a junior user of the same mark when (1) the junior user, in good faith and without notice of its use by the senior user, expends money and effort in building up a substantial business in a territory which has been unoccupied for a long time by the senior user's business; and when (2) the senior user, with notice of the infringement delays for an unreasonable time in asserting his rights. Hanover Star Milling Company v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; United Drug Co. v. Rectanus Co., 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141.

The District Court held that under the above rule the appellant was barred from interfering with appellee's use of the trade-mark "Greystone". Appellant contends, however, that in the present case the time which elapsed between its first knowledge of the sale of "Greystone" wine in Pennsylvania, and its first action toward preventing such sale in that state, a period of approximately three years, is too short a time to warrant the application of this rule.

The rule is based upon the principle that equity will not aid a litigant who has been guilty of unreasonable delay in asserting his rights. No arbitrary rule can be stated with reference to the time which will constitute an unreasonable delay. This depends in each case upon the extent to which the junior user, who has built up his business in good faith, will be injured by enforcement of the senior user's rights.

Because of the rapid growth of the wine and liquor industry which took place following the repeal of Prohibition, appellee has been able to build a large and profitable business in Pennsylvania in a short time. These circumstances required prompt action on the part of appellant because it knew, or should have known, that the wine business was growing rapidly, and that delay in enforcing its rights would result in serious injury to appellee.

Appellant contends that its failure to use its "Greystone" brand in Pennsylvania was due to the fact that it was awaiting

the outcome of its litigation with California Wine Association and Bisceglia Brothers of California. It further contends that because appellee's labels stated that its "Greystone" wine was manufactured by Bisceglia Brothers of California, it proceeded to protest to that firm under the impression that it was responsible for the sale of this brand in Pennsylvania. Appellant also contends that the court below should have found that appellee and its predecessors were acting as the agents of Bisceglia Brothers of California.

Much testimony was taken by the trial court on these matters, and the court below, in a full and carefully considered opinion, found that no agency relationship existed between appellee and the California firm, and that appellant made no inquiry to determine whether the "Greystone" wine sold in Pennsylvania was that of Bisceglia Brothers of California, although the name of the appellee distributor appeared on its labels and advertising matter. The lower court further found that appellant declined to sell its "Greystone" brand to the Pennsylvania Liquor Control Board because of unacceptable credit terms. The court below then concluded that appellant "* * * has, by its conduct and its failure to project its business in this state, and having an equal opportunity, evidenced an intent to abandon, and is by its laches and acquiescence precluded from preventing the plaintiff [appellee] from enjoying the benefits of its trade and good will in Pennsylvania which it has built up at great expense." [20 F.Supp. 571.] The court below was fully warranted in the above stated findings of fact and conclusions of law.

In the opinion of the court below the district judge has separately found the facts and reached his conclusions of law, which are ably and comprehensively covered and discussed in his opinion. We have carefully examined all of his findings of fact and conclusions of law, and agree therewith. The decree of the court below is therefore affirmed.

DAVIS, Circuit Judge (dissenting).

I am constrained to dissent from the conclusion reached by the court in this case.

In order to get a full understanding of this case and reach a correct conclusion it is necessary to restate some of the facts.

The "Greystone" mark was first owned and used from 1895 to 1929 by the California Wine Association, hereinafter referred to as the Association. In May, 1911, the Association registered this name in the United States Patent Office as a trademark for Hock-Tyoe (white Rhine type) of wine, though it also used the name on labels of other types of wines such as Port, Burgundy and Sherry, and also on labels of brandy. The name "Greystone", when referring to wines, was used to connote wines produced in several California counties including Napa, Sonoma and Lake counties, and was not limited to wines produced at or about a certain "Greystone" Winery then owned by the Association. These "Greystone" wines were marketed generally by the Association throughout the United States until prohibition in 1920, and thereafter in sacramental and medicinal channels. There is evidence of such sales being made in Pennsylvania.

In 1924, a partnership in San Jose, California, consisting chiefly of members of the Bisceglia family, and known as Bisceglia Brothers, purchased from the Association the "Greystone" Winery. The contract of sale and deed do not purport to convey any trade-marks or good will. This partnership, hereinafter referred to as the California Biscaglias, did not operate this winery for many years nor did it attempt to use the "Greystone" mark until 1933.

In 1929 several wine manufacturing concerns in California, including the Association, but not the California Biscaglias, pooled their property and formed the appellant, Fruit Industries, Ltd. As a result, the appellant acquired title, among other things, to the "Greystone" trademark, and also to approximately 18,000 bottles of "Greystone" wine. Appellant took all necessary steps to keep the "Greystone" trade-mark alive in the United States Patent Office throughout prohibition, and since repeal it has been engaged in continuous litigation and negotiations in order to retain its title to the "Greystone" trade-mark and its right to the exclusive use thereof.

Late in 1932 and early in 1933, when it became evident that prohibition would be repealed certain of the concerns which had consolidated into the appellant, including the Association, desired to withdraw from the appellant. In June, 1933, the Association filed suit to recover all

of its property including its trade-marks, among which was the "Greystone" mark, its pooled wine, real property, etc. Pending the outcome of this suit, all of appellant's "Greystone" and other pooled wine, formerly belonging to the Association, was impounded by the court. This litigation which involved three suits lasted for two years, until June, 1935, when the impounding order was lifted.

In the meantime the California Bisceglias were trying in every possible way to usurp appellant's right to the "Greystone" trade-mark. They registered it in the United States Patent Office in 1933. This registration the appellant succeeded in having cancelled in 1934. Continuous negotiations between the California Bisceglias and the appellant were carried on until March 1936, when the appellant finally filed suit against them for infringement of the "Greystone" trade-mark, demanding an accounting of profits and damages. This litigation was finally compromised in October, 1936, when an agreement was entered into between the appellant and the California Bisceglias under which the appellant withdrew its suit and the California Bisceglias assigned to the appellant all their right in the trademark "Greystone" or "Graystone" including two registrations thereof in Pennsylvania, dated June 21, 1933, and February 6, 1936, respectively. (The latter registration had been obtained by the appellee.)

However, this settlement of the suit with the California Bisceglias did not, contrary to appellant's expectation, end its troubles, for it then found that "Greystone" wines were still being sold in Pennsylvania by the appellee, a corporation named "Bisceglia Brothers", but *claiming* to have no connection with the California Bisceglias.

The appellee is the successor to a wine distributing business originally conducted by one Edward Black, and then by his widow as "Edward Black's Estate". However, even when Black (or his widow) was conducting the business, it was known as "Bisceglia Bros." which name had been registered since 1929 under the Pennsylvania Fictitious Names Act. For the sake of clarity, we shall refer to the appellee and its predecessors as the Pennsylvania Bisceglias, although it is alleged that no one of that name is interested in them.

The Pennsylvania Bisceglias ever since December 1933 have been selling "Grey-stone" wines which were manufactured and shipped to them by the California Bisceglias. The labels on such wine, besides bearing the word "Greystone", bore the words in large print, "Manufactured by * * * Bisceglia Bros. * * * San Jose, California". In very small letters, the words "Edward Black" or "Edward Black Est." appeared on the labels but never during the years 1933 to 1936, inclusive did there appear upon them any mention of the Pennsylvania Bisceglias in any form, nor was the connection of Edward Black or his estate with the wine anywhere indicated.

In August, 1935, the Pennsylvania Bisceglias were incorporated and Mr. Margolis, who married Edward Black's widow, became president of the corporation. It does not appear in the briefs just who owned the beneficial interest in the stock of this corporation, but Alphonse Bisceglia testified that neither he, nor any of the California Bisceglias had any interest in the Pennsylvania Bisceglias, and that none of the Pennsylvania Bisceglias had any interest in the California Bisceglias, though the credibility of this testimony seems to be weakened by other evidence.

If there was no connection between the Pennsylvania and California Bisceglias, it seems strange that the Pennsylvania Bisceglias on February 6, 1936, were able to obtain registration in Pennsylvania of the "Greystone" name when the word "Graystone" had been registered in that state by the California Bisceglias since 1933. It is also interesting at this point to note that in the compromise agreement of October, 1936, the registration of "Greystone" by the Pennsylvania Bisceglias was purportedly conveyed to the appellant by the California Bisceglias.

In April, 1936, Alphonse Bisceglia, of the California Bisceglias, came East and told Margolis, with whom he was very "friendly", all about the negotiations and litigation between the appellant and the California Bisceglias. He also allegedly made some objection to Margolis concerning the use of the word "Greystone" by the Pennsylvania Bisceglias. However, upon returning to California, in July 1936, he wrote to the Pennsylvania Bisceglias conceding to it "Exclusive right of the Greystone label in Pennsylvania, and urging it to "proceed with an extensive advertising campaign on the Graystone brand". It is not without significance that

the California Bisceglias so acted at a time when they were being sued by the appellant for infringement of the Greystone trade-mark, at a time when negotiations for settlement of such suit were in progress and just a few months prior to the actual compromise of such suit. Alphonse Bisceglia admitted that he was fearful of signing the compromise agreement after the above dealings with the Pennsylvania Bisceglias, and that he signed only after his attorney assured him that the contract transferred only the present interest of the California Bisceglias in the "Greystone" trade-mark and relieved them of all liability "for the acts of third parties acting independently and not under understanding or agreement with" them.

When "Greystone" wines continued to be sold in Pennsylvania by the Pennsylvania Bisceglias, the appellant wrote to the Liquor Control Board of that commonwealth, informing it of the negotiations, litigation and compromise agreement between it and the California Bisceglias, and claiming exclusive right to the "Greystone" name. The Board thereupon ceased taking orders of "Greystone" wine from the Pennsylvania Bisceglias until March, 1937 when they effected satisfactory indemnity arrangements pending the determination of the rights of the respective parties. In February, 1937, the Pennsylvania Bisceglias instituted the present suit.

The District Court, among other things, found that the Pennsylvania Bisceglias had marketed and advertised "Greystone" wines in Pennsylvania since December 1933; that the appellant knew that "Greystone" wines, not its product, were being sold in Pennsylvania since early in 1934; that the appellant did not address any objections to the Pennsylvania Bisceglias concerning their use of the "Greystone" name until January or February of 1937 and had made no attempt to market or advertise "Greystone" wines in Pennsylvania between December 1933 and January 1937, approximately three years.

From these bare facts, the District Court drew the following inferences: (1) That the appellant acquiesced in the use by the Pennsylvania Bisceglias of the "Greystone" name; (2) that the appellant intended to abandon that name in Pennsylvania, and (3) that the appellant was guilty of laches in protecting its rights to that name. From these inferences of fact, the learned trial Judge drew the following conclusion of law: "7. Defendant has by its conduct and its failure to project its business in this state, and having an equal opportunity, evidenced an intent to abandon, and is by its laches and acquiescence precluded from preventing the plaintiff from enjoying the benefits of its trade and good will in Pennsylvania which it has built up at great expense."

Before examining the above conclusion of law, it must be noted that the inferences upon which it is based are questions, not of "evidentiary" but of "ultimate", facts which are not binding upon this court. Helvering v. Tex-Penn Oil Co., 300 U.S. 481, 57 S.Ct. 569, 81 L.Ed. 755.

After examining the record it seems evident that the appellant never intended to abandon its right in the "Greystone" name, that it never consciously acquiesced in the use thereof by the Pennsylvania Bisceglias, and that it was not, under the circumstances, guilty of laches in protecting its rights thereto. It is obvious that none of these inferences would have been drawn if the appellee in this case had been the California Bisceglias rather than the Pennsylvania Bisceglias, for the constant negotiations and litigation existing between the appellant and the California Bisceglias conclusively negatives any such inferences. Is then the fact that the appellee is the Pennsylvania Bisceglias conclusive of the interpretation to be given the appellant's actions? If the Pennsylvania Bisceglias had shown that the appellant knew or reasonably should have known that they were independent of, and separate from, the California Bisceglias, then it might be that the failure of the appellant to protest to them concerning their use of the "Greystone" name, evidenced an intention to abandon to them the "Greystone" name, or evidenced an acquiescence in such use, or was evidence of laches. However, it clearly appears that the appellant believed that the Pennsylvania Bisceglias were identified with, the agent of, or in some way closely connected with the California Bisceglias, and when all the evidence is considered, the conclusion is inescapable that they were closely connected and that the Pennsylvania Bisceglias knew what was going on between the California Bisceglias and the appellant. The Pennsylvania Bisceglias adopted as their name "Bisceglia Brothers" which for years had been the legal name of the California Bisceglias (and we wonder why they adopt-

ed this particular name); they bottled and sold the wines of the California Bisceglias; for the years 1933 to 1937 they carried the name "Bisceglia Brothers * * * San Jose California" prominently on the label, without any indication that there was a "Bisceglia Brothers" of Philadelphia, Pennsylvania; they sold "Greystone" wines at a time when the word "Graystone" was registered as a trade name in Pennsylvania by the California Bisceglias; the labels on the bottles frequently contained a picture of the "Greystone" winery in California which one of the appellant's predecessors, the Association, had conveyed to the California Bisceglias, and the certificate of registration of the fictitious name "Bisceglia Bros.", filed by Edward Black, designated the business to be carried on as a "bonded winery *agency*". Indeed, if the Pennsylvania Bisceglias were actually separate from, and independent of, the California Bisceglias, there was nothing on the face of things which would have led a reasonably prudent man to suspect that fact.

Under these circumstances the failure of the appellant to protest to the Pennsylvania Bisceglias of their use of the "Greystone" name, when it was vigorously protesting to the California Bisceglias, can not be said to be any evidence of an intent to abandon the "Greystone" name in Pennsylvania, of any acquiescence in the use of that name by the Pennsylvania Bisceglias, or of laches.

This brings us to the bare question here involved: There being no evidence of an intent to abandon and no evidence of acquiescence in the use of the trade-mark by the appellee, does the fact that the appellant did not use the trade-mark in Pennsylvania from December 1933 to January 1937, under the facts and circumstances of this case, constitute an abandonment of it as a matter of law? This question must be answered in the negative, for "in the absence of intentional abandonment, mere disuse will not destroy trade-mark rights" and "abandonment is not shown, even by numerous infringements, in the absence of the owner's acquiescence". 63 C.J. 524, 525; Beech-Nut Packing Co. v. P. Lorillard Co., D.C., 299 F. 834, affirmed 3 Cir., 7 F.2d 967, affirmed 269 U.S. 551, 46 S.Ct. 203, 70 L.Ed. 407; Anheuser-Busch, Inc. v. Budweiser Malt Products Corp., D.C., 287 F. 243, affirmed 2 Cir., 295 F. 306; Edward & John Burke v. Bishop, C.C., 175 F. 167.

Furthermore, the appellant, being a co-operative enterprise, financed by the Farm Credit Administration, a federal agency, could not sell any wines to the Pennsylvania Liquor Control Board in late 1933 or early 1934, for, under the federal fiscal regulations, the appellant was required to discount all paper given in payment for its products, and the paper of the Board was not then acceptable for discount. From 1934 to late in 1936 its right to the "Greystone" name was in almost constant litigation with the Association and the California Bisceglias. Within a few months after the settlement with the California Bisceglias, the appellant made attempts to revive its market of "Greystone" wines in Pennsylvania. Clearly no intentional abandonment of the name resulted or can be inferred under these circumstances.

The District Court laid much stress on the fact that the Pennsylvania Bisceglias had expended large sums in advertising the "Greystone" name, but this they did with their eyes wide open and, under the evidence in this case have no one to blame but themselves.

However, even though these expenditures were made innocently, they do not under the circumstances invest the Pennsylvania Bisceglias with the right to appellant's property. 63 C.J. 574; Straus v. Notaseme Hosiery Co., 240 U.S. 179, 36 S.Ct. 288, 60 L.Ed. 590.

It seems to me that the decree of the District Court should be reversed and the cause remanded with instructions to dismiss the bill of complaint.